373 So.2d 882 (1979)
Jon Steven MILLER, a/K/a Robert Christopher, Appellant,
v.
The STATE of Florida, Appellee.
No. 50606.
Supreme Court of Florida.
May 10, 1979.
As Corrected On Denial of Rehearing August 31, 1979.
Jack O. Johnson, Public Defender, David S. Bergdoll, and W.C. McLain, Asst. Public Defenders, Bartow, for appellant.
Jim Smith, Atty. Gen., and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
This case is before us on direct appeal from the trial court's order imposing the death penalty on appellant pursuant to his conviction of first-degree murder. We have *883 jurisdiction under article V, section 3(b)(1), Florida Constitution. Upon careful consideration of the evidence presented during the sentencing phase of the trial and the findings of fact by the trial court in its sentencing order, we conclude that the imposition of the death sentence was improperly based on the trial court's consideration of a nonstatutory aggravating factor. Therefore, the sentence of death is vacated.
Appellant's conviction of first-degree murder was previously affirmed by this court in an opinion at 332 So.2d 65 (Fla. 1976).[1] There, this court held the trial court had erred in denying defense requests for a continuance in order to secure certain psychiatric witnesses in order to present testimony to the jury during the sentencing hearing on two statutory mitigating circumstances: (1) whether the defendant acted under the influence of extreme mental disturbance, and (2) whether his ability to conform his conduct to the requirements of law was substantially impaired. On remand, a new sentencing hearing was held during which the defense presented psychiatric testimony on these issues. However, the new jury also recommended that Miller be put to death. The trial court concurred with the jury's recommendation and imposed the death sentence pursuant to detailed findings of fact set forth in the record on the various aggravating and mitigating circumstances involved in this homicide and with this defendant.
Pursuant to Florida Statute 921.141, the Court finds the following aggravating circumstances exist:
Florida Statute 921.141, subparagraph 5, subparagraph (b). The defendant was previously convicted of a felony involving the threat of violence to another person.
Subparagraph (d), the murder was completed while the defendant was engaged in the commission or attempt to commit robbery. And as such, the murder was committed for pecuniary gain.
Although aggravating factors (d) and (f) are separate factors by law, the Court holds in this case that the facts support ____. No, the Court holds in this case the facts support that the facts giving rise to both factors come from the same factual occasion, and as such only one factor is found to exist, to wit: subparagraph (d).
Subparagraph (h), the murder was especially heinous, atrocious and cruel.
The Court finds no other aggravating factors to have been proven beyond and to the exclusion of every reasonable doubt.
The Court finds the following mitigating circumstances exist:
Florida Statute 921.141, subparagraph 6, subparagraph (b). The murder was committed while the defendant was under the influence of extreme mental disturbance.
Subparagraph (e), the defendant acted under extreme mental duress.
Subparagraph (f), due to mental sickness the defendant's capacity or ability to conform his conduct to the requirements of law was substantially impaired.
The Court finds no other mitigating factors to have been established by the evidence.
The Court specifically finds from the testimony of the defendant, the psychiatrists, medical reports, the various witnesses who observed and followed the defendant after his purchase of the knife, *884 and the witnesses who testified about the defendant's behavior at the jail, that the defendant was suffering from mental illness at the time the murder was committed. And that this mental sickness, or illness, met the criteria of mitigating circumstances set out above, and designated by the Statute as (b), (e) and (f).
I should also point out that the Court's failure to find that the defendant's capacity to appreciate the criminality of his conduct under subparagraph (f) was not unintentional. I specifically find that the defendant could and did appreciate the criminality of his conduct.
In regard to the aggravating factors, and specifically in regard to aggravating factor (h), one need only review the photographs, the testimony of Dr. Graves, the witness, Harry Morris, and the defendant, and other witnesses who found the deceased body to conclude that the murder was especially heinous, atrocious and cruel.
In regard to aggravating factor (b), one need only review the defendant's testimony and the evidence of the man's conviction in Massachusetts.
In regard to the aggravating factor (d), the evidence in regard to blood soaked funds, funds dispersed to the defendant at the jail, and the subsequent inventory at the jail, subsequent to his rearrest, the defendant's testimony, and the testimony of witness Johnson, the cellmate, to find support of the aggravating factors (d) and (f).
However, as I have previously indicated for purposes of determining aggravating factors, (d) and (f) are treated as one factor since they arise from the same transaction and factual occurrence.
In weighing the aggravating factors of circumstances, and the mitigating circumstances, the Court concludes that there are insufficient mitigating circumstances to outweigh the aggravating circumstances.
The trial court found that the evidence introduced at the sentencing hearing proved beyond a reasonable doubt three statutory aggravating circumstances: (1) the defendant was previously convicted of a felony involving the threat of violence to another person; (2) the murder was committed while the defendant was engaged in the commission of or attempt to commit robbery, and was thus committed for pecuniary gain; and (3) the murder was especially heinous, atrocious, and cruel.[2]
In addition, the trial court found several mitigating circumstances to exist: (1) the murder was committed while the defendant was under the influence of extreme mental disturbance; (2) the defendant acted under mental duress; (3) due to mental sickness, the defendant's capacity and ability to conform his conduct to the requirements of law were substantially impaired.[3] In addition, the trial court specifically found from the evidence presented at the sentencing hearing that the defendant was suffering from mental illness at the time the murder was committed.
Based upon these factual findings, the trial judge explained the reasoning which led him to conclude that the death penalty was appropriate:
In weighing the circumstances or factors the Court must consider whether the *885 ultimate punishment is appropriate. In this case you have death on one hand, life imprisonment on the other; which should mean that the only distinction between the two is the ability to live. For life imprisonment should mean just what the words indicate, to spend the rest of one's life in a prison environment. Death, obviously means death. Thus, the difference between the two has to be the ability to live in confinement.
Thus, in weighing the aggravating and mitigating factors, I have to conclude that the aggravating factors are such that the reality of Florida law wherein life imprisonment is not, in fact, life imprisonment; and, in fact, the defendant would be subject to be released into society  In other words, it doesn't mean life imprisonment and there is a substantial chance he could be released into society. And the testimony overwhelmingly establishes that the mental sickness or illness that he suffers from is such that he will never recover from it, it will only be repressed by the use of drugs.
Thus, in light of that fact, in light of the aggravating factors here, I have to conclude the only certain punishment and the only assurance society can receive that this man never again commits to another human being what he did to that lady, is that the ultimate sentence of death be imposed.
If the law in Florida were such that life imprisonment meant the ability to live in a prison environment for the entire, remainder of one's life, I would have the conclusion that there would be sufficient mitigating factors to offset the aggravating factors, and allow him to live in prison.

But since that is not the case, the reality is that life imprisonment does not mean that, I conclude in this case that the aggravating factors heavily outweigh the mitigating factors.
The heinousness of the crime, the way in which it was committed speaks for itself. Now I, as the Judge, must therefore impose the sentence of death and do so. [Emphasis added.]
It is clear from the trial judge's sentencing order that he considered as an aggravating factor the defendant's allegedly incurable and dangerous mental illness.[4] The use of this nonstatutory aggravating factor as a controlling circumstance tipping the balance in favor of the death penalty was improper. The aggravating circumstances specified in the statute are exclusive, and no others may be used for that purpose. Purdy v. State, 343 So.2d 4 (Fla. 1977). This court, in Elledge v. State, 346 So.2d 998, 1003 (Fla. 1977) stated:
We must guard against any unauthorized aggravating factor going into the equation which might tip the scales of the weighing process in favor of death.
Strict application of the sentencing statute is necessary because the sentencing authority's discretion must be "guided and channeled" by requiring an examination of specific factors that argue in favor of or against imposition of the death penalty, thus eliminating total arbitrariness and capriciousness in its imposition. Proffitt v. Florida, 428 U.S. 242, 258, 96 S.Ct. 2960, 49 *886 L.Ed.2d 913 (1976). The trial judge's use of the defendant's mental illness, and his resulting propensity to commit violent acts, as an aggravating factor favoring the imposition of the death penalty appears contrary to the legislative intent as set forth in the statute. The legislature has not authorized consideration of the probability of recurring violent acts by the defendant if he is released on parole in the distant future. To the contrary, a large number of the statutory mitigating factors reflect a legislative determination to mitigate the death penalty in favor of a life sentence for those persons whose responsibility for their violent actions has been substantially diminished as a result of a mental illness, uncontrolled emotional state of mind, or drug abuse.
It appears likely that at least one of the aggravating circumstances proven at the sentencing hearing, the heinous nature of the offense, resulted from the defendant's mental illness. This court has previously recognized in other capital cases that those mitigating circumstances involved in the present case may be sufficient to outweigh the aggravating circumstances involved even in an atrocious crime. Huckaby v. State, 343 So.2d 29 (Fla. 1977); Burch v. State, 343 So.2d 831 (Fla. 1977); Jones v. State, 332 So.2d 615 (Fla. 1976); Swan v. State, 322 So.2d 485 (Fla. 1975). In Huckaby, this court recognized that, although there was insufficient proof of legal insanity, the evidence showed Huckaby's mental illness was a motivating factor in the commission of the crime for which he was convicted. There, this court reversed the trial court's imposition of the death penalty and held that the mitigating circumstances outweighed the aggravating circumstances. This court stated:
Our decision here is based on the causal relationship between the mitigating and aggravating circumstances. The heinous and atrocious manner in which this crime was perpetrated, and the harm to which the members of Huckaby's family were exposed, were the direct consequence of his mental illness, so far as the record reveals.
Huckaby v. State, 343 So.2d 29, 34 (Fla. 1977).
In light of the trial court's findings that the defendant was suffering from mental illness at the time he committed this crime, the motivating role the defendant's mental illness played in this crime, and the apparent causal relationship between the aggravating circumstances and his mental illness, it was reversible error for the trial court to consider as an additional aggravating circumstance, not enumerated by the statute, the possibility that Miller might commit similar acts of violence if he were ever to be released on parole. Whether a defendant who is convicted of a capital crime and receives a life sentence should be allowed a chance of parole after 25 years is a policy determination for the legislature or the parole authorities rather than for the courts. Therefore, the sentence of death is vacated and the cause remanded to the trial court for resentencing in a manner not inconsistent with this opinion.
It is so ordered.
ENGLAND, C.J., and BOYD, OVERTON, SUNDBERG and HATCHETT, JJ., concur.
NOTES
[1] The facts adduced at trial show that appellant was released from county jail on the morning of the murder, where he had been incarcerated for possession of a concealed weapon (a fishing knife). Appellant wandered around Ft. Myers and bought a fishing knife similar to the one which had been taken from him by the police. An employee in the store where the weapon was purchased stated that appellant was "wild looking" and was mumbling angrily to himself. This employee called the police and followed appellant to two nearby bars. Finally, appellant was seen leaving in a taxi cab with a woman driver. The store employee contacted the taxi company to inform them of the apparent danger. The woman taxi driver was found murdered a short while thereafter. She had been stabbed nine times. Appellant apparently raped her when she was dead or dying. When appellant was arrested at the bus station that evening, his pants were still covered with blood. Blood-soaked money, some of which had been taken from the taxi driver, was found in his pockets.
[2] § 921.141(5)(b), (f), and (h), Fla. Stat. (1973) state:

(b) The defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person.
(f) The capital felony was committed for pecuniary gain.
(h) The capital felony was especially heinous, atrocious, or cruel.
[3] § 921.141(6)(b), (e), and (f), Fla. Stat. (1973) state:

(b) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance.
(e) The defendant acted under extreme duress or under the substantial domination of another person.
(f) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.
However, the trial court concluded that the defendant could and did appreciate the criminality of his conduct.
[4] After appellant was charged with this crime, he was found incompetent to stand trial and was committed to the state mental hospital at Chattahoochee. After two and a half years confinement and treatment, he was found sufficiently competent to stand trial. Apparently, his mental illness was in remission through the use of tranquilizing drugs. Psychiatric testimony presented at the sentencing hearing concluded that appellant was suffering from paranoid schizophrenia and hallucinations. He had been committed to mental hospitals on several previous occasions, and had a long history of drug abuse. Appellant had a severe hatred for his mother, and had planned to kill her after his release from the Lee County Jail, just prior to this murder. Appellant had been raised primarily by his mother, who had been married four times. For many years prior to this crime, appellant's mother had refused any contact with her son. On several previous occasions, appellant suffered hallucinations in which he saw his mother in other persons, in a "yellow haze." On at least one previous occasion, he had senselessly assaulted another woman during such hallucinations. Appellant testified that at the time of this murder, he saw his mother's face on this 56-year-old woman taxi driver, in a "yellow haze," and proceeded to stab her to death.