Wayne E. RITTER, Petitioner-Appellant,

v.

Fred SMITH, Commissioner, Alabama Department of Corrections; and J.D. White, Warden, Holman Unit, Respondents-Appellees.

No. 83–7486.

United States Court of Appeals, Eleventh Circuit.

Feb. 27, 1984.

As Amended on Denial of Rehearing April 9, 1984.

John L. Carroll, Montgomery, Ala., for petitioner-appellant.

Edward Carnes, Asst. Atty. Gen., Charles A. Graddick, Atty. Gen., Montgomery, Ala., for respondents-appellees.

Before JOHNSON and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

**JOHNSON, Circuit Judge:**

Petitioner Wayne Eugene Ritter was tried and convicted of capital murder on April 26, 1977, in the Mobile County, Alabama, Circuit Court. The trial court sentenced him to death. After exhausting his review by way of direct appeal in the Alabama state courts, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C.A. § 2254 in the United States District Court for the Southern District of Alabama. The district court denied all requested relief and dismissed the petition. *Ritter v. Smith,* 568 F.Supp. 1499 (S.D.Ala. 1983). This appeal followed.

Petitioner and John Lewis Evans, III, committed an armed robbery of a pawn shop in Mobile, Alabama, on January 5, 1977. During the course of this robbery, the pawn shop owner, Edward Nassar, was shot in the back by Evans and was killed. Petitioner and Evans were apprehended by agents of the Federal Bureau of Investigation on March 7, 1977, in Little Rock, Arkansas. On March 8, 1977, after waiving his *Miranda* rights, petitioner confessed his involvement in the Mobile, Alabama, robbery and murder to the FBI agents.

Petitioner and Evans were indicted under Alabama's death penalty statute[1] for the capital offense of murder during the commission of a robbery.[2] Acting against the advice of his lawyer, petitioner entered a guilty plea to this charge and sought to forego a jury trial, but this procedure was not available under the Alabama death penalty statute then in force.[3] Petitioner waived his right to a separate trial and requested to be tried with his co-defendant, Evans. Despite his lawyer's advice to the contrary, petitioner testified against himself before both the grand jury and his trial jury. Petitioner testified before the grand jury and at trial that, although he did not fire the shot that killed Edward Nassar, he possessed the intent to kill; he stood ready and willing to assist in the killing; and he would have been the actual triggerman if Evans had not been in his line of fire. During his trial testimony, petitioner threatened to harm the jury if they did not convict him of the capital offense, and petitioner made a thumbs up gesture to the jury when the guilty verdict was announced.

Pursuant to the then applicable Alabama death penalty statute, the jury included in its guilty verdict a sentence of death.[4] At a separate sentencing hearing, during which evidence of statutory aggravating and mitigating factors was presented, the trial judge sentenced petitioner and Evans to death.

Petitioner's conviction and sentence were subject to automatic review under the Alabama death penalty statute,[5] and his case was in the Alabama appellate courts or before the United States Supreme Court on petition for writ of certiorari to the Alabama Supreme Court for the next six years.[6] The United States Supreme Court granted certiorari on three occasions, but each resulted in a remand to the Alabama Supreme Court rather than a decision on the merits of petitioner's claims.[7] On the third remand, the Alabama Supreme Court affirmed petitioner's conviction and sentence, *Ritter v. State,* 429 So.2d 928 (Ala. 1983), and following the denial of a rehearing, set petitioner's execution for May 13, 1983.

On May 5, 1983, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C.A. § 2254 in the United States District Court for the Southern District of Alabama. Following an initial hearing on

**1.** Ala.Code §§ 13–11–1—13–11–9 (1975) (repealed 1981).

**2.** *Id.* § 13–11–2(a)(2) provides that "robbery or attempts thereof when the victim is intentionally killed by the defendant" is a capital offense.

**3.** *See Prothro v. State,* 370 So.2d 740 (Ala.Cr. App.1979).

**4.** *Id.* § 13–11–2(a).

**5.** *Id.* § 13–11–5.

**6.** For a detailed procedural history of this case see *Ritter v. State,* 429 So.2d 928, 931–32 (Ala. 1983).

**7.** *Ritter v. Alabama,* 448 U.S. 903, 100 S.Ct. 3044, 65 L.Ed.2d 1133 (1980); *Alabama v. Ritter,* 454 U.S. 885, 102 S.Ct. 376, 70 L.Ed.2d 200 (1981); *Alabama v. Ritter,* 457 U.S. 1114, 102 S.Ct. 2921, 73 L.Ed.2d 1326 (1982).

the petition, the district court entered an order staying petitioner's execution. In June of 1983 an evidentiary hearing was held and in August the district court entered an opinion and order denying all requested relief and dismissing the petition. *Ritter v. Smith,* 568 F.Supp. 1499 (S.D.Ala. 1983).

In this appeal, petitioner challenges the district court's denial of habeas corpus relief on two grounds: (1) petitioner claims that the 1975 Alabama death penalty statute under which he was convicted and sentenced to death violates the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment; and (2) petitioner claims that the death penalty as applied in Alabama violates the Eighth Amendment's guarantee against cruel and unusual punishment.[8] For the following reasons, we affirm the district court's denial of habeas corpus relief, with the exception of its denial of habeas corpus relief on petitioner's claim that the 1975 Alabama death penalty statute's sentencing procedures are unconstitutional, which we reverse.

## I. *The Constitutionality of the 1975 Alabama Death Penalty Statute*

Petitioner challenges both his conviction and his death sentence on the grounds of the constitutionality of the 1975 Alabama death penalty statute under which he was tried, convicted and sentenced to death. Petitioner claims that he is entitled to a new trial because he was prejudiced by the 1975 Alabama death penalty statute's preclusion of the jury's consideration of lesser included offenses at the guilt/innocence phase of his trial.[9] Petitioner also claims that the statute's requirement that the sentencing authority, in Alabama the trial judge, consider the jury's mandatory death sentence in determining whether to impose the death sentence[10] renders his sentencing hearing constitutionally infirm. We affirm the district court's denial of habeas corpus relief on the first claim, and reverse on the second.

A. The Preclusion Clause: The Guilt/Innocence Phase of Petitioner's Trial

In *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), the United States Supreme Court was presented with a challenge to the preclusion clause of the 1975 Alabama death penalty statute and held that the statute's preclusion of the jury's consideration of a verdict of guilt on a lesser included noncapital offense, especially in light of the mandatory sentencing clause, unacceptably diminished the reliability of the factfinding process in violation of the Eighth Amendment and the Due Pro-

---

**8.** Petitioner also claims that the failure of the Alabama courts to conduct comparative proportionality review under the 1975 death penalty statute violates the Eighth Amendment. This claim is foreclosed by the Supreme Court's recent decision in *Pulley v. Harris,* —— U.S. ——, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), in which the Court held that comparative proportionality review is not constitutionally required.

**9.** Ala.Code § 13–11–2(a) (1975) (repealed 1981) contains, respectively, both the mandatory sentencing clause and the preclusion clause at issue in this appeal:

If the jury finds the defendant guilty, it shall fix the punishment at death when the defendant is charged by indictment with any of the following offenses and with aggravation, which must also be averred in the indictment, and which offenses so charged with said aggravation shall not include any lesser offenses.

**10.** *Id.* § 13–11–4 provides that:

Notwithstanding the fixing of the punishment at death by the jury, the court, after weighing the aggravating and mitigating circumstances, may refuse to accept the death penalty as fixed by the jury and sentence the defendant to life imprisonment without parole, which shall be served without parole; or the court, after weighing the aggravating and mitigating circumstances, and the fixing of the punishment at death by the jury, may accordingly *sentence the defendant to death.* If the court imposes a sentence of death, it shall set forth in writing, as the basis for the sentence of death, findings of fact from the trial and the sentence hearing, which shall at least include the following:

(1) One or more of the aggravating circumstances enumerated in section 13–11–6, which it finds exists in the case and which it finds sufficient to support the sentence of death; and

(2) Any of the mitigating circumstances enumerated in section 13–11–7 which it finds insufficient to outweigh the aggravating circumstances.

cess Clause of the Fourteenth Amendment, when the evidence would have supported such a verdict.

In *Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), the United States Supreme Court addressed the issue of whether "[a]fter invalidation of a state law which precluded instructions on lesser included offenses in capital cases, a new trial is required in a capital case in which the defendant's own evidence negates the possibility that such an instruction might have been warranted." *Id.* at 606, 102 S.Ct. at 2050. The Court held that "[d]ue process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction." *Id.* at 611, 102 S.Ct. at 2053. (emphasis in original). Reviewing Evans' course of conduct at trial of actively seeking the death penalty, and thus his own testimony that he intended to kill his victim, the Court found that no evidence was present to warrant a lesser included offense instruction in *Evans'* case, and that "[Evans] suggests no plausible claim that he might conceivably have made, had there been no preclusion clause, that is not contradicted by his own testimony at trial." *Id.* at 613, 102 S.Ct. at 2054. The Court therefore held that Evans was not prejudiced by the existence of the preclusion clause in the 1975 Alabama death penalty statute and was not entitled to a new trial. The Court noted, however, that "[i]n another case with different facts, a defendant might make a plausible claim that he would have employed different trial tactics—for example, that he would have introduced certain evidence or requested certain jury instructions—but for the preclusion clause." *Id.* at 613–14 n. \*\*, 102 S.Ct. at 2054.

Petitioner argues that this is the other case with different facts from that in *Evans,* and that he would have employed different trial tactics—seeking a felony murder lesser included offense instruction and not making statements suggesting his intent to kill the victim—but for the preclu-

sion clause. Of course, petitioner's claim rests on the premise that his conduct at trial was based on his knowledge of the preclusion clause, and that armed with that knowledge he chose to seek the death penalty at trial in preference to life imprisonment without parole. Petitioner concedes that the district court found as a fact that he had no knowledge of the preclusion clause at the time he embarked on his course of conduct of actively seeking the death penalty, but argues that the district court's factfindings are clearly erroneous.[11]

█ The district court refused to credit petitioner's testimony at the evidentiary hearing that he would have pursued a different course of conduct during his trial and presented a lesser included offense defense in the absence of the preclusion clause, but instead credited the testimony of two FBI agents and a Mobile police officer that petitioner announced his intent to seek the death penalty before he learned of the existence of the preclusion clause. Both FBI agents who interviewed petitioner in Little Rock, Arkansas, testified that petitioner told them that he preferred execution to spending the rest of his life in prison, and that he intended to seek execution when he returned to Alabama. The Mobile police officer who accompanied petitioner on his flight from Arkansas to Alabama testified that petitioner told him that he intended to plead guilty and to seek the death penalty on his return to Alabama. Petitioner testified at the evidentiary hearing that he wasn't sure at what point in time he became aware of the preclusion clause, but that "[i]t was after I got here to Alabama."[12]

Petitioner has not identified any evidence in the record in support of his claim that the district court's crediting of this testimony that the petitioner formulated his strategy of actively seeking the death penalty before he returned to Alabama and before, as petitioner testified, he was aware of the preclusion clause was clear error. After a careful review of the record, we can find no

---

**11.** *See Proffitt v. Wainwright,* 685 F.2d 1227, 1255 (11th Cir.1982), holding that the clearly erroneous rule applies to the district court's findings of fact in capital cases.

**12.** Record at 252.

evidence suggesting that the district court so erred. We therefore hold that under *Evans* petitioner has failed to show that he would have employed different trial tactics but for the preclusion clause, and that accordingly petitioner is not entitled to a new guilt/innocence phase trial.

**B. The Mandatory Sentencing Clause: The Sentencing Phase of Petitioner's Trial**

Petitioner claims that the 1975 Alabama death penalty statute's sentencing procedures, requiring consideration by the sentencing judge of the jury's mandatory death sentence, in effect at the time of his conviction and sentence are unconstitutional and that he is entitled to a new sentencing hearing. The State does not address the merits of petitioner's constitutional challenge to the sentencing procedures except by citation to the opinion of the Alabama Supreme Court in Ritter v. State, 429 So.2d 928, 934–37 (1983). Instead, the State contends that all of the sentencing procedure claims here asserted by the petitioner were raised by his co-defendant, John Lewis Evans, III, and rejected on their merits by the United States Supreme Court in its decisions denying Evans a stay of execution pending the disposition of his petition for writ of certiorari, *Evans v. Alabama,* —— U.S. ——, 103 S.Ct. 1735, 75 L.Ed.2d 921 (1983) (Powell, J. in chambers), and vacating a stay of execution entered by the United States District Court for the Southern District of Alabama, *Alabama v. Evans,* —— U.S. ——, 103 S.Ct. 1736, 75 L.Ed.2d 806 (1983) (per curiam). Alternately, the State contends that any constitutional error in petitioner's sentencing proceeding was harmless beyond a reasonable doubt.

For the following reasons, we hold that the 1975 Alabama death penalty statute's sentencing procedures, under which petitioner was sentenced to death, are unconsti-

tutional and that petitioner is entitled to a new sentencing hearing.

1. The United States Supreme Court's Decisions in the *Evans* Case

The procedural history of Evans' challenges to the constitutionality of Alabama's capital sentencing procedures, necessary to provide the context for the decisions on which the State relies, is as follows.

Evans and petitioner were both sentenced to death under the 1975 Alabama death penalty statute.[13] In a joint appeal, pursuant to the automatic appeal provision of the death penalty statute,[14] Evans and petitioner challenged the constitutionality of their sentencing proceedings. The Alabama Court of Criminal Appeals affirmed their convictions and sentences, *Evans v. State,* 361 So.2d 654 (1977), and the Alabama Supreme Court affirmed Evans' conviction and sentence, 361 So.2d 666 (1978).[15] Evans' petition for writ of certiorari to the Alabama Supreme Court was denied. *Evans v. Alabama,* 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979).

Evans then filed a petition for writ of habeas corpus in the United States District Court for the Southern District of Alabama claiming, *inter alia,* that the death penalty statute's preclusion clause and sentencing procedures were unconstitutional. After an evidentiary hearing, the district court rejected Evans' claims on their merits and denied the petition. *Evans v. Britton,* 472 F.Supp. 707 (S.D.Ala.1979). Evans appealed, and the former Fifth Circuit reversed the district court on the grounds that the statute's preclusion clause was unconstitutional and that the harmless error rule did not apply. *Evans v. Britton,* 628 F.2d 400 (1980) (per curiam), *modified on rehearing,* 639 F.2d 221 (1981) (per curiam). The United States Supreme Court granted certiorari and reversed the judgment of the Court of Appeals on the preclusion clause issue. *Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982).

The judgment of the United States Supreme Court reinstated Evans' conviction,

---

**13.** Evans and petitioner were tried together, were both convicted of the capital offense, and were sentenced to death by the same judge at a joint sentencing proceeding.

**14.** Ala.Code § 13–11–5 (1975) (repealed 1981).

**15.** The Alabama Supreme Court reversed petitioner's conviction and sentence and remanded to the Alabama Court of Criminal Appeals on the nontriggerman issue. *Evans v. State, supra.*

but his challenges to the statute's sentencing procedures remained to be decided by the Court of Appeals on remand. In July of 1982, however, after briefing and before a decision, Evans dismissed his attorneys and filed a motion with the Court of Appeals seeking leave to dismiss his appeal. This Court dismissed the appeal on October 19, 1982.

On October 22, 1982, the State filed a motion requesting that the Alabama Supreme Court set an execution date for Evans. Evans filed a petition in response attacking the constitutionality of the statute's sentencing procedures and requesting a new sentencing hearing. The Alabama Supreme Court denied Evans' petition, *Evans v. State,* 432 So.2d 463 (1983), and set Evans' execution for April 22, 1983.

On April 19, 1983, Evans filed a petition for certiorari in the United States Supreme Court. Later the same day, Evans filed an application for a stay of execution pending the disposition of his petition for certiorari. On April 21, 1983, Justice Powell, acting in his capacity as Circuit Justice and with the concurrence of six other members of the Court, denied Evans' application for a stay, *Evans v. Alabama,* —— U.S. ——, 103 S.Ct. 1735, 75 L.Ed.2d 921, stating that "[Evans'] constitutional challenges to Alabama's capital-sentencing procedures have been reviewed exhaustively and repetitively by several courts in both the state and federal systems," —— U.S. at ——, 103 S.Ct. at 1736, 75 L.Ed.2d at 923, and concluding that "[t]here is not 'a reasonable probability that four members of this Court would find that this case merits review.'" *Id. (quoting White v. Florida,* 458 U.S. 1301, 103 S.Ct. 1,

73 L.Ed.2d 1385 (1982) (Powell, J. in chambers)).

Approximately seven hours before his scheduled execution, Evans filed a second habeas petition in the United States District Court for the Southern District of Alabama again claiming, *inter alia,* that the statute's sentencing procedures were unconstitutional. The district court ordered a temporary stay of execution. The State sought an order from this Court vacating the stay, which was denied. The United States Supreme Court granted the State's application to vacate the district court's stay of execution. *Alabama v. Evans,* —— U.S. ——, 103 S.Ct. 1736, 75 L.Ed.2d 806 (1983) (per curiam). Evans was executed on April 22, 1983.

The State concedes that the decision in *Evans v. Alabama,* denying Evans' application for a stay pending the disposition of his petition for certiorari, is not a binding decision on the merits of Evans' constitutional challenges to Alabama's sentencing procedures. We agree,[16] and hold that this decision does not decide the merits of petitioner's claims before this Court.

The State claims, however, that the decision in *Alabama v. Evans,* granting the State's application to vacate the stay of execution, is such a determination on the merits of Evans' sentencing procedure claims and controls petitioner's present challenge to Alabama's capital sentencing procedures. We disagree.

The decision in *Alabama v. Evans* does not support the State's argument that it was intended as a binding decision on the merits of Evans' sentencing procedure claims. First, we note that the opinion in *Alabama v. Evans* was rendered as a ruling on an application to vacate a stay.[17]

---

**16.** An application for a stay pending the disposition of a petition for certiorari will be granted when there is "[a] reasonable possibility that four members of the Court will find that this case merits review." *Evans v. Alabama,* —— U.S. at ——, 103 S.Ct. at 1736, 75 L.Ed.2d at 923 (quoting *White v. Florida,* 458 U.S. 1301, 103 S.Ct. 1, 73 L.Ed.2d 1385 (1982) (Powell, J. in chambers)); *see also Lenhard v. Wolff,* 443 U.S. 1306, 100 S.Ct. 3, 61 L.Ed.2d 885 (1969) (Rehnquist, J. in chambers). A denial of a stay pending disposition of a petition for certiorari on the ground that four members of the Court would deny certiorari, as in *Evans v. Alabama,*

certainly imports no more than a decision to deny certiorari, which does not express any views on the merits of the claims presented. *Alabama v. Evans,* —— U.S. at ——, 103 S.Ct. at 1740, 75 L.Ed.2d at 811 n. * (Marshall, J. dissenting); *see also Graves v. Barnes,* 405 U.S. 1201, 1204, 92 S.Ct. 752, 754, 30 L.Ed.2d 769 (1972) (Powell, J. in chambers).

**17.** "[T]he well established principles that guide a Circuit Justice in considering an application to stay a judgment entered below are equally applicable when considering an application to vacate a stay." *Named and Unnamed Children*

Second, we find no textual support in the opinion itself for the State's argument. The merits of Evans' sentencing proceeding claims were not discussed by the Court in *Alabama v. Evans.* Instead, the Court quoted Justice Powell's statement in *Evans v. Alabama,* that Evans' "constitutional challenges to Alabama's capital-sentencing proceedings have been reviewed exhaustively and repetitively by several courts in both the state and federal systems," —— U.S. at ——, 103 S.Ct. at 1738, 75 L.Ed.2d at 808, and noted that:

> [T]he District Court found that "counsel for petitioner conceded that all issues raised in the petition were raised in the petition previously filed before [the United States District Court] except for the issue asserted in section 12 of the petition." *Thus, in the latest petition for habeas corpus, all but one of the grounds*

> *presented have been presented before and rejected.* —— U.S. at ——, 103 S.Ct. at 1738, 75 L.Ed.2d at 808–809 (emphasis supplied).

The Court granted the State's application to ·vacate the stay on the grounds that:

> [Evans'] petition for writ of habeas corpus filed on April 21, 1983, thus seeks to litigate several issues *conclusively resolved* in prior proceedings and a claim never before raised. This new claim, challenging the validity of one of the aggravating circumstances found to exist in this case, is a question of law as to which no further hearing is required. —— U.S. at ——, 103 S.Ct. at 1739, 75 L.Ed.2d at 809 (emphasis supplied).

■ The similarity between the Court's analysis of Evans' sentencing proceeding claims in *Alabama v. Evans* and *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), is apparent.[18] Under

---

*v. Texas,* 448 U.S. 1327, 1330, 101 S.Ct. 12, 14, 65 L.Ed.2d 1151 (1980) (Powell, J. in chambers). We have previously noted, *see* note 16 *supra,* that a decision to grant or deny a stay is not one on the merits of the claims presented.

**18.** The State contends that the Court's analysis in *Alabama v. Evans* cannot be interpreted in light of the *Sanders* principles for three reasons. First, the State argues that such an interpretation is unwarranted because the Court in *Alabama v. Evans* did not explicitly refer to *Sanders,* Rule 9(b) Governing 28 U.S.C.A. § 2254 Cases, or abuse of the writ principles. We find this argument unconvincing in light of the similarity of analysis between the Court's treatment of Evans' sentencing procedure claims and *Sanders. See* text *supra.*

Second, the State claims that the Court's treatment of the one new claim raised in Evans' successor habeas petition, that the Alabama courts applied a statutory aggravating factor in an unconstitutionally broad manner, refutes such an interpretation. In addressing this issue, the Court noted that it had not been raised in any of Evans' previous state and federal proceedings, and had been raised for the first time approximately seven hours before his execution. "His only justification for raising this issue now is that, in his view, the decision in *Proffitt v. Wainwright,* 685 F.2d 1227, 1265–66 (CA11), decided in September, 1982, some seven months ago, has changed the applicable law." —— U.S. at ——, 103 S.Ct. at 1738, 75 L.Ed.2d at 809. Finding that *Proffitt* did not change the applicable law, and that there was no constitutional violation in finding the aggravating factor in Evans' case, the Court held

that the new·claim was without merit and "[i]s a question of law as to which no further hearing is required." *Id.* We note that this analysis parallels that required under *Sanders:* a court may refuse to hold an evidentiary hearing and decline to entertain a successor habeas petition raising a new ground not previously presented unless the petitioner can show that the delay in asserting the new ground is not an abuse of the writ—a burden that may be met by showing an intervening change in the applicable law. *See also Alabama v. Evans,* —— U.S. at ——, 103 S.Ct. at 1740, 75 L.Ed.2d at 811 (Marshall, J. dissenting). The fact that the Court reached the merits of Evans' new claim and determined that on the facts of his case there was no violation of the *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), principle that aggravating factors must be construed and applied in a nonarbitrary manner does not indicate, as the State claims, that the *Sanders* principles were not applied by the Court in *Alabama v. Evans* or that the Court so reached the merits of Evans' sentencing procedure claims.

Third and finally, the State points to *Autry v. Estelle,* —— U.S. ——, 104 S.Ct. 24, 78 L.Ed.2d 7 (1983) (White, J. in chambers), as evidence that its claims support an argument.that the Supreme Court does not apply the *Sanders* principles in capital cases. Again, the opinion in *Autry* refutes such a claim. In *Autry,* Justice White entered a stay of execution based on a claim raised for the first time in a second habeas petition that Texas' failure to provide comparative proportionality review was unconstitutional. In that case, Justice White concluded that a change in the applicable law, the

*Sanders,* an issue may be conclusively resolved for purposes of a successor habeas petition if it has been presented before and rejected on its merits, and the ends of justice would not be served by reaching the merits of the successor petition. *Id.* at 15, 83 S.Ct. at 1077. The petitioner's failure to appeal an adverse ruling on his prior habeas petition is a factor considered in the ends of justice calculus of the *Sanders* test. *Johnson v. Wainwright,* 702 F.2d 909 (11th Cir. 1983); *Bass v. Wainwright,* 675 F.2d 1204 (11th Cir.1982). A court's refusal to entertain an issue raised in a state prisoner's successor habeas petition on the ground that the issue has been conclusively resolved because it has previously been presented, decided on its merits, rejected, and on appeal from that rejection voluntarily dismissed, is clearly not a decision on the merits.[19] *Sanders v. United States,* 373 U.S. at 18, 83 S.Ct. at 1078.

In addition to the procedural posture of *Alabama v. Evans* as a decision on an application to vacate a stay, the lack of discussion of Evans' sentencing procedure claims, and the similarity between the Court's analysis of Evans' sentencing procedure claims and principles governing successor habeas petitions, we find further evidence that the decision was not intended as one on the merits of Evans' sentencing procedure claims in Justice Marshall's dissent: "The execution of Evans *prior to a decision of his claims on the merits* will ensure that such certainty [of the legality of Evans' execu-

tion] is never achieved." —— U.S. at ——, 103 S.Ct. at 1740, 75 L.Ed.2d at 812 (emphasis supplied).

In sum, we find no evidence in *Alabama v. Evans* to support the State's claim that the United States Supreme Court reached the merits of Evans' sentencing procedure claims and determined that the Alabama capital sentencing procedures were constitutional. Therefore, since petitioner, unlike Evans,[20] appeals from the denial of his first habeas corpus petition, we hold that the decision in *Alabama v. Evans* does not preclude our consideration of the merits of his challenge to the 1975 Alabama death penalty statute's sentencing procedures.

### 2. The 1975 Alabama Death Penalty Statute's Sentencing Procedures

The Alabama death penalty statute provides that if the jury finds the defendant guilty of a capital offense "[i]t shall fix the punishment at death." Ala.Code § 13–11–2(a) (1975) (repealed 1981). The jury has no discretion to fix any other penalty. The jury is not informed that the judge is the final sentencing authority and is thus led to believe, by implication, that its sentence will be final. *Beck v. Alabama,* 447 U.S. 625, 639 n. 15, 100 S.Ct. 2382, 2390 n. 15, 65 L.Ed.2d 392 (1980).

If the defendant is convicted of a capital offense, and the death sentence thus automatically imposed by the jury, the statute provides that the trial judge must then hold a separate sentencing hearing at which evi-

Court's grant of certiorari in *Pulley v. Harris,* —— U.S. ——, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), made the issue in the second habeas petition one that did not lack substance.

**19.** The State argues that "conclusively resolved" as used by the Court in *Alabama v. Evans* means a determination on the merits of Evans' sentencing procedure claims. We agree that a conclusive resolution for purposes of the *Sanders* analysis is one on the merits. We find, however, that the conclusion that the State seeks to draw from this unexceptionable premise, that the Court in *Alabama v. Evans* decided this issue on its merits, does not follow and is in fact contradicted by the opinion itself: "conclusively resolved *in prior proceedings* "— the decision disposing of the first habeas petition and the dismissal of Evans' appeal from this decision.

**20.** The State contends that a ruling by this Court in petitioner's favor on his sentencing procedure claims leads to the inevitable result that in *Alabama v. Evans* the Supreme Court vacated the stay of execution of a defendant convicted of the same crime and sentenced by the same judge under the same statute as petitioner. We find the procedural distinction between Evans' and petitioner's cases critical. Evans was given the full and fair opportunity to present his constitutional challenges to Alabama's capital sentencing procedures in both state and federal court; after an evidentiary hearing, the district court rejected his claims on their merits; Evans chose to dismiss his appeal from that decision. Petitioner, however, appeals from the district court's denial of his first challenge in federal court to the 1975 Alabama death penalty statute's sentencing procedures.

dence "[m]ay be presented as to any matters that the court deems relevant to sentence and shall include any matters relating to any of the [statutory] aggravating or mitigating circumstances." § 13–11–3. The judge then determines whether to sentence the defendant to death or to life imprisonment without parole. § 13–11–4. "[A]fter weighing the aggravating and mitigating circumstances, [the court] may refuse to accept the death penalty as fixed by the jury and sentence the defendant to life imprisonment without parole." *Id.* Or "[t]he court, after weighing the aggravating and mitigating circumstances, and the fixing of the punishment at death by the jury, may accordingly sentence the defendant to death." *Id.* If the court imposes the death sentence, it must set forth in writing the factual findings from the trial and the sentencing hearing, including aggravating and mitigating circumstances, that form the basis for its sentence. *Id.* The judgment of conviction and sentence of death are subject to automatic appeal. § 13–11–5.

For clarity of analysis, we repeat that under this statutory scheme the trial judge is the final sentencing authority and that the jury's mandatory death sentence is not statutorily binding on the judge. For this reason, the district court termed the jury's mandatory sentence the "phantom" sentence. Petitioner contends, however, that the statute's express requirement that the judge weigh the factor of the phantom sentence—a factor petitioner claims is facially

unconstitutional because it is unguided and standardless, reflects a blurred consideration of guilt and sentencing concerns, and does not reflect an individualized consideration of the particular defendant—in determining whether or not to impose the death sentence renders the sentencing procedure constitutionally infirm.[21] Accordingly, petitioner claims that he is entitled to a new sentencing hearing.[22] We agree.

In *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the Court concluded that capital punishment, as then administered under capital sentencing procedures vesting unguided sentencing discretion in the ultimate sentencing authority, had become constitutionally cruel and unusual punishment. "[W]here discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Zant v. Stephens,* —— U.S. ——, ——, 103 S.Ct. 2733, 2741, 77 L.Ed.2d 235 (1983) (quoting *Gregg v. Georgia,* 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)).

This means that if a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty. . . . It must channel the sentencer's discretion by "clear and objective standards" that provide "specific and

21. Petitioner also attacks the mandatory sentencing provision on the grounds that: (1) requiring the jury to fix the punishment at death whenever they find the defendant guilty of a capital offense, especially in light of the fact that the jury is not told that the judge is the final sentencing authority, blurs the separate questions of guilt and sentence and thus distorts the jury's role in the sentencing process, and (2) the mandatory sentence provision destroys the only mechanism by which evolving community standards may inform the sentencing decision in a capital case. Because the trial judge is the final sentencing authority under the statute, we read these claims as based on a premise that jury sentencing, or jury input into the sentencing determination, is constitutionally required. In *Proffitt v. Florida,* 428 U.S. 242, 252, 96 S.Ct. 2960, 2966, 49 L.Ed.2d 913 (1976),

the Supreme Court held that although jury sentencing can perform an important societal function, it is not constitutionally required. Therefore, we reject a challenge to the sentencing procedures on this ground.

22. A successful challenge to the mandatory sentencing provision as a factor in the judge's sentencing determination does not entitle petitioner to a new guilt/innocence phase trial, and petitioner does not so contend. The distortion in the guilt/innocence determination by the interaction of the preclusion clause and the mandatory sentencing clause, eliminating from the jury's consideration the third option of conviction on a lesser included offense, condemned by the Court in *Beck* was limited in *Hopper* to cases where the evidence warranted a lesser included offense instruction.

detailed guidance," and that "make rationally reviewable the process for imposing a sentence of death." *Godfrey v. Georgia,* 446 U.S. 420, 428, 100 S.Ct. 1759, 1764–1765, 64 L.Ed.2d 398 (1980) (citations and footnotes omitted).

And because there is "[a] qualitative difference between death and any other permissible form of punishment, 'there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.'" *Zant v. Stephens,* —— U.S. at ——, 103 S.Ct. at 2747 (*quoting Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976)). Thus, the Court's decisions since *Furman* have "[m]ade clear that the States may impose this ultimate sentence only if they follow procedures designed to assure reliability in sentencing determinations." *Barclay v. Florida,* —— U.S. ——, ——, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134, 1139 (1983) (Stevens, Powell, JJ. concurring). In assessing capital sentencing procedures the Court has "[a]ttempted to provide standards for a constitutional death penalty that would serve both goals of a measured, consistent application and fairness to the accused." *Eddings v. Oklahoma,* 455 U.S. 104, 111, 102 S.Ct. 869, 874, 71 L.Ed.2d 1 (1982).

■ Due to this heightened standard of reliability in capital sentencing procedures, involving considerations of both consistency and fairness to the accused, capital sentencing procedures must be tailored to provide for "[a]n *individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Zant v. Stephens,* —— U.S. at ——, 103 S.Ct. at 2744 (emphasis in original). Thus, sentencing schemes that exclude from the sentencer's consideration the critically relevant factors of the character of the individual defendant and the circumstances of the crime as mitigating factors are constitutionally inadequate. *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

■ Likewise, particular features included in a sentencing scheme may be "[s]ufficiently inadequate, unreliable, or unfair that they violate the United States Constitution." *Barclay v. Florida,* —— U.S. at ——, 103 S.Ct. at 3429, 77 L.Ed.2d at 1150 (Stevens, Powell, JJ. concurring). Each aggravating factor included in a sentencing scheme "[m]ust satisfy a constitutional standard derived from the principles of *Furman* itself." *Zant v. Stephens,* —— U.S. at —— —— ——, 103 S.Ct. at 2742. Therefore, an aggravating factor, whether statutory or nonstatutory, considered by the sentencer in its determination of whether to impose the death sentence must not be "[c]onstitutionally impermissible or totally irrelevant to the sentencing process." *Id.* at ——, 103 S.Ct. at 2747.

In light of these principles, and mindful of the Court's admonition that "[a]lthough not every imperfection in the deliberative process is sufficient, even in a capital case, to set aside a state court judgment, the severity of the sentence mandates careful scrutiny in the review of any colorable claim of error," *id.,* we turn to an examination of the factor of the jury's mandatory death sentence included in Alabama's capital sentencing determination.

■ First, the jury's mandatory death sentence is a factor in the sentencing process which must meet the constitutional standards established in *Furman* to be permissible.[23] This is a test the mandatory death sentence factor clearly does not meet. A mandatory death sentence requirement, withdrawing all sentencing discretion from the jury, results in a distortion of the guilt/innocence determination in order to allow for such discretion. *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). The jury's decision to exercise this de facto sentencing discretion is both unguided and standardless, and necessarily reflects a blurred consideration of guilt/innocence and sentencing concerns. A mandatory death penalty statute therefore "[d]oes not fulfill *Furman*'s basic requirement by replacing arbitrary and wan-

**23.** For purposes of this analysis, we treat the mandatory sentencing factor as analogous to an aggravating factor—weighing in favor of the imposition of the death sentence.

ton jury discretion with objective standards to guide, regularize and make rationally reviewable the process for imposing a sentence of death." *Id.* at 303, 96 S.Ct. at 2990–2991. Further, the jury's mandatory death sentence by definition does not reflect any individualized focus on the circumstances of the particular offense and the character and propensities of the offender. *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). Fundamentally, the mandatory death sentence is a factor which is totally irrelevant to the sentencing process; it is simply a statutory consequence of the jury's finding of guilt of a capital offense, and reflects no considerations in favor of imposing the death penalty in any particular case. *Cf. Beck v. Alabama,* 447 U.S. 625, 642, 100 S.Ct. 2382, 2392, 65 L.Ed.2d 392 (1980) ("In the final analysis the difficulty with the Alabama statute is that it interjects irrelevant considerations into the factfinding process...."). Because the mandatory death sentence as a statutorily required factor to be considered in the sentencing process is a factor which is unguided and standardless, reflects no individualized consideration of the particular defendant or crime, and is irrelevant to the sentencing process, we hold that it is a constitutionally impermissible factor in Alabama's capital sentencing scheme.

We further find that the constitutionally impermissible factor of the jury's mandatory death sentence infects the trial judge's sentencing determination. Although a separate sentencing hearing is held by the trial judge, at which evidence of aggravating and mitigating factors is introduced, the statute requires that in making the deter-

mination whether to impose the death sentence after reviewing this evidence the judge must decide whether he will "[r]efuse to accept the death penalty as fixed by the jury." Ala.Code § 13–11–4 (1975) (repealed 1981). Moreover, the statute requires the judge to weigh the mandatory death sentence factor in the balance with his consideration of aggravating and mitigating circumstances in deciding to impose the death penalty. *Id.* Thus, the constitutionally impermissible factor of the jury's mandatory death sentence must be given weight in the judge's own sentencing decision. In *Beck* the Supreme Court noted the influence of this factor on the judge's sentencing decision:

> [I]t is manifest that the jury's verdict must have a tendency to motivate the judge to impose the same sentence that the jury did. Indeed, according to statistics submitted by the State's Attorney General, it is fair to infer that the jury verdict will ordinarily be followed by the judge even though he must hold a separate sentencing hearing in aggravation and mitigation before he imposes sentence.

447 U.S. at 645, 100 S.Ct. at 2393 (footnote omitted).

In order to arrive at a sentencing determination unaffected by the influence of the jury's mandatory death sentence, the judge must disobey the statute's express requirement that the mandatory death sentence be considered in his decision.[24]

We hold that the inclusion of the constitutionally invalid factor of the jury's mandatory death sentence in the sentencing determination, and the statutorily required influence of that invalid factor on the

---

**24.** The district court noted that petitioner's claim that the influence of the jury's mandatory death sentence on the judge's decision to *impose* the death penalty rendered the sentencing process unconstitutional was substantial. 568 F.Supp. at 1521. The district court further noted that where the sentencing decision presented a close question the inclusion of the jury's mandatory death sentence in the sentencing formula might prejudice a defendant. The district court held, however, that in petitioner's case the trial judge acted without the influence of the mandatory sentence factor and accepted the jury's sentence upon an indepen-

dent weighing of aggravating and mitigating circumstances that did not include the factor of the mandatory death sentence. *Id.* We note that in order to arrive at this result, and ignore the mandatory sentence factor in his determination, the trial judge was presumed to have disregarded the Alabama statute. Further, because the petitioner challenges the statute on its face, and not as applied to him, the influence of the constitutionally impermissible factor of the jury's mandatory death sentence on the judge's sentencing determination in a close case requires a finding of facial unconstitutionality.

judge's sentencing decision, renders the 1975 Alabama death penalty statute's sentencing procedures facially unconstitutional.

### 3. The Harmless Error Rule

The State contends that any constitutional defect in the sentencing procedures was, in petitioner's case, harmless error beyond a reasonable doubt because in the unique circumstances here presented, in which petitioner testified against himself at trial and threatened the jury with harm if they did not convict him and sentence him to death, a reasonable sentencer under any set of procedures would have imposed the death penalty. Petitioner counters by claiming that the harmless error rule does not apply to facial constitutional defects in a capital sentencing scheme; relying on *Stewart v. Massachusetts,* 408 U.S. 845, 92 S.Ct. 2845, 33 L.Ed.2d 744 (1972) (per curiam); *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), and *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), in which the Supreme Court invalidated death sentences imposed under unconstitutional sentencing procedures without discussion or application of the harmless error rule. In response, the State cites *Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982); *Zant v. Stephens,* — U.S. —, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); and *Washington v. Strickland,* 693 F.2d 1243 (5th Cir. Unit B 1982) (en banc),[25] as examples of the application of the harmless error rule in capital cases. We find that *Hopper* and *Washington* are distinguishable from the present case,[26] and that the analysis in *Stephens* governs our disposition of this issue.

In *Stephens,* the Supreme Court employed essentially a federal harmless error analysis, *Barclay v. Florida,* — U.S. —, —, 103 S.Ct. 3418, 3425 n. 8, 77 L.Ed.2d 1134, 1144–45 n. 8 (1983), to a constitutional defect in a capital sentencing scheme. One of the three statutory aggravating factors found by Stephens' sentencing jury was subsequently held invalid by the Georgia Supreme Court as unconstitutionally vague because it failed to provide an adequate basis for distinguishing a murder case in which the death penalty may be imposed from those cases in which such a penalty may not be imposed. The Court addressed the issue of whether, under these circumstances, a defendant's death sentence must be vacated, and found that "[t]he answer depends on the function of the jury's finding of an aggravating circumstance under Georgia's capital sentencing statute, and on the reasons that the aggravating circumstance at issue in this particular case was found to be invalid." — U.S. at —, 103 S.Ct. at 2736. The Court first found that

---

**25.** Decisions rendered by the en banc court of the former Fifth Circuit handed down after September 30, 1981, are binding on this Court unless and until overruled or modified by this Court en banc. *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982) (en banc).

**26.** *Evans* held that the harmless error rule applies to facial constitutional defects in a statute affecting the guilt/innocence phase of a capital trial, but did not address the applicability of such a rule to the sentencing phase. The State claims that the *Beck* Court's statement that the "death is different" principle, demanding greater reliability in capital sentencing procedures, "[m]ust apply to rules that diminish the reliability of the guilt determination," 447 U.S. at 638, 100 S.Ct. at 2390, requires that application of the harmless error rule to facial constitutional defects at the guilt/innocence phase in *Evans* automatically entails a similar incorporation of the harmless error rule at the sentencing phase. We disagree. First, the *Beck* Court's statement was aimed at procedures diminishing the reliability of either the guilt/innocence or sentencing determination, and not the harmless error rule. Second, *California v. Ramos,* — U.S. —, —, 103 S.Ct. 3446, 3456–3457, 77 L.Ed.2d 1171, 1185 (1983), noted the "[f]undamental difference between the nature of the guilt/innocence determination at issue in *Beck* and the nature of the life/death choice at the penalty phase," in addressing a defendant's challenge to the California death statute's sentencing procedures. Finally, because we hold that *Stephens* requires that the harmless error rule apply to some, but not all, defects in a capital sentencing scheme, we reject the State's argument that *Beck* and *Evans* speak to all sentencing procedure errors.

*Washington* held that the harmless error rule applies to ineffective assistance of counsel claims at the sentencing phase. No challenge to the constitutionality of the statutory sentencing scheme was involved.

under Georgia's capital sentencing scheme, the finding of an aggravating factor served the function of narrowing the class of persons convicted of murder who are eligible for the death penalty, that the two valid statutory aggravating factors properly achieved this function, and that the discretion of the sentencer was thus suitably directed and limited in this case. The Court then considered whether the invalid factor injected a constitutionally impermissible consideration into the sentencer's exercise of that limited discretion:

> Respondent contends that the death sentence was impaired because the judge instructed the jury with regard to an invalid statutory aggravating circumstance, a "substantial history of serious assaultive criminal convictions," for these instructions may have affected the jury's deliberations. In analyzing this contention it is essential to keep in mind the sense in which that aggravating circumstance is "invalid." It is not invalid because it authorizes a jury to draw adverse inferences from conduct that is constitutionally protected. Georgia has not, for example, sought to characterize the display of a red flag, cf. *Stromberg v. California* [283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931)], the expression of unpopular political views, cf. *Terminiello v. Chicago,* 337 U.S. 1 [69 S.Ct. 894, 93 L.Ed. 1131] (1949), or the request for trial by jury, cf. *United States v. Jackson,* 390 U.S. 570 [88 S.Ct. 1209, 20 L.Ed.2d 138] (1968), as an aggravating circumstance. Nor has Georgia attached the "aggravating" label to factors that are constitution-

ally impermissible or totally irrelevant to the sentencing process, such as for example the race, religion, or political affiliation of the defendant, cf. *Herndon v. Georgia,* 301 U.S. 242 [57 S.Ct. 732, 81 L.Ed. 1066] (1937), or to conduct that actually should militate in favor of a lesser penalty, such as perhaps the defendant's mental illness. Cf. *Miller v. Florida,* 373 So.2d 882, 885–886 (Fla.1979). *If the aggravating circumstance at issue in this case had been invalid for reasons such as these, due process would require that the jury's decision to impose death be set aside.*
> —— U.S. at ——, 103 S.Ct. at 2747 (emphasis supplied).

In *Stephens,* the Court held that the underlying evidence introduced by the invalid factor was properly admissible at the sentencing hearing under both Georgia law and the United States Constitution, that "[n]othing in the United States Constitution prohibits a trial judge from instructing a jury that it would be appropriate to take account of a defendant's prior criminal record in making its sentencing determination," *id.* at ——, 103 S.Ct. at 2749, and that any impact on the jury's deliberations from the fact that this evidence was improperly designated a statutory aggravating factor "[c]annot fairly be regarded as a constitutional defect in the sentencing process." *Id.* Accordingly, Stephens' death sentence was upheld.

■ The import of *Stephens* is clear: a federal harmless error analysis[27] will be applied to a facial constitutional defect in a capital sentencing scheme if, and only if,

---

**27.** The Supreme Court has not since *Stephens* addressed a case in which a factor in a capital sentencing was found invalid on federal constitutional grounds. *See Wainwright v. Goode,* —— U.S. ——, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983) (nonstatutory aggravating factor improper under state law); *Barclay v. Florida,* —— U.S. ——, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983) (same). In both of these cases the Court held that the error of state law did not rise to the level of a constitutional violation, and "[t]hus we need not apply the type of federal harmless error analysis that was necessary in [*Stephens*]." *Barclay v. Florida,* —— U.S. at ——–——, 103 S.Ct. at 3425 n. 8, 77 L.Ed.2d at 1144–45 n. 8. In such a case, as the State

points out, an analysis of the state law error as harmless error has been permitted. *See id.* at ——–——, 103 S.Ct. at 3427–3428, 1147–49; *Shriner v. Wainwright,* 715 F.2d 1452, 1458–59 (11th Cir.1983); *Moore v. Balkcom,* 716 F.2d 1511, 1524 (11th Cir.1983); *Ford v. Strickland,* 696 F.2d 804, 815 (11th Cir.1983) (en banc) & *Godbold,* Chief J. concurring, 696 F.2d at 822–24. Of course, the error claimed in this case is a facial constitutional defect in the statute, and not a mere error in state law. Therefore, the *Stephens* test for the applicability of the federal harmless error rule governs and distinguishes the present case from the cases on which the State relies.

two criteria are met. First, independent of the invalid factor, the sentencing scheme must limit and channel the sentencer's discretion. Second, the invalid factor must not inject constitutionally impermissible or totally irrelevant considerations into the sentencer's exercise of that discretion. In *Stephens,* both of these criteria were met, and the defendant's death sentence was therefore constitutionally imposed. In *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), Ohio's death penalty statute narrowly limited the sentencer's discretion to consider only statutory mitigating factors, which did not include a consideration of the circumstances of the crime and the record and character of the offender as mitigating factors. The first criterion of the *Stephens* test was thus met in *Lockett,* and the sentencer's discretion was limited and channelled. The second criterion, however, was not met by a scheme that excluded the constitutionally relevant and indispensable consideration by the sentencer of any aspect of the defendant's character and record as an independently mitigating factor. In *Lockett,* the defendant's death sentence was vacated without further inquiry.

In the present case, we assume without deciding that, absent the invalid factor of the jury's mandatory death sentence, the 1975 Alabama death penalty statute's statutory aggravating and mitigating factors suitably limit the sentencer's discretion. We hold, however, that this invalid factor injects a constitutionally impermissible and irrelevant consideration into the sentencer's exercise of that discretion in determining whether to impose a sentence of death. Therefore, as in *Lockett,* no further inquiry is required, and petitioner's death sentence is due to be vacated.

## II. *The Application of the Death Penalty in Alabama*

Petitioner claims that the death penalty as applied in Alabama violates the Eighth Amendment's guarantee against cruel and unusual punishment. For the reasons stated in the district court's opinion, 568 F.Supp. at 1525–1527, we reject this claim.

## III. *Conclusion*

The decision of the district court that petitioner is not entitled to a new sentencing hearing is REVERSED, and this case is REMANDED with instructions to the district court to issue the writ of habeas corpus if the State of Alabama does not afford petitioner a new sentencing hearing.

AFFIRMED IN PART; REVERSED IN PART and REMANDED.