429 So.2d 928 (1983)
In the Matter of Wayne Eugene RITTER
v.
STATE of Alabama.
77-798.
Supreme Court of Alabama.
February 11, 1983.
Rehearing Denied April 8, 1983.
John L. Carroll, Montgomery, for petitioner.
Charles A. Graddick, Atty. Gen., and Ed Carnes and Nancy Perry, Asst. Attys. Gen., for respondent.
EMBRY, Justice.
The United States Supreme Court, 457 U.S. 1114, 102 S.Ct. 2921, 73 L.Ed.2d 1326, has remanded this case to this court for our *929 further consideration in light of its decision in Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), holding that due process requires that a lesser included offense instruction in a case punishable by execution be given only when the evidence warrants such an instruction. Further, the evidence in that case not only supported the claim that the accused, Evans, intended to kill the victim but affirmatively negated any claim that he did not intend to do so. Accordingly, the Supreme Court concluded an instruction on the offense of unintentional killing was not warranted.
This case of Evans' co-participant in same offense is now before us for the sixth time[1] in order that we may determine whether the conviction and sentence of death, of Wayne Eugene Ritter, is due to be affirmed.
Although a full statement of the facts is contained in previous opinions of this court, see Ex parte Ritter, 375 So.2d 270 (Ala. 1979), and the Court of Criminal Appeals, see, Evans v. State, 361 So.2d 654 (Ala.Cr. App.1977), they are, briefly, as follows:
Wayne Eugene Ritter and a companion, John Louis Evans, were released from an Indiana penitentiary on parole during the early part of December 1976.
On 25 December 1976, Ritter and Evans violated their parole and left Indianapolis, Indiana, on a planned crime spree. According to their testimony, they committed approximately 30 armed robberies, nine kidnappings, and two extortion schemes in seven different states during a two month period. During this spree, on 5 January 1977, they arrived in Mobile looking for a place to rob where they could obtain money and a pistol for Ritter. They eventually picked Nassar's Pawn Shop because "it was a nice, small place" and "looked very easy." Ritter and Evans entered the pawn shop and Ritter asked the shop owner, Edward Nassar, to show him a gun. When Nassar handed the gun to Ritter, Evans pulled a pistol and announced his intention to rob Nassar. Thereupon, Nassar dropped down behind a counter and began crawling away, at which point Evans shot him in the back, killing him. Nassar's two daughters, ages seven and nine, were present and watching in terror from the corner of the shop. Ritter and Evans fled the shop and in the two ensuing months committed numerous crimes as they travelled from state to state. They were finally apprehended by the Federal Bureau of Investigation on 7 March 1977 in Little Rock, Arkansas.
On 8 April 1977, Ritter was indicted by the Mobile Grand Jury under § 13-11-2(a)(2), Code 1975. That code section makes "robbery or attempts thereof when the victim is intentionally killed by the defendant" a capital offense. Contrary to the repeated advice of his attorney, Ritter entered a plea of guilty to the charge. At all times prior to, during, and after the proceedings which led to his conviction, Ritter was thoroughly advised of his constitutional rights by his attorney, the trial judge or both. Ritter repeatedly stated that he understood those rights and on each occasion, consciously waived the same. His case was submitted to a jury for determination of guilt or innocence and sentence because he could only be sentenced to death under Alabama's capital felony statute, § 13-11-1, et seq., Code 1975.
During trial, Ritter took the stand and detailed the robbery and killing. Although he did not fire the shot that killed Nassar, he testified to both the grand jury, and the trial jury, that he possessed the intent to kill; he stood ready and willing to assist in the killing; and he would have been the actual triggerman had Evans not been in his line of fire. During his testimony, Ritter threatened to kill the jury if they did not convict him of the capital offense and demanded that he be sentenced to death. On 26 April 1977, the case was submitted to a jury which within fifteen minutes returned a verdict of guilty and fixed the *930 punishment at death.[2] On 27 April 1977, the trial court held a sentence hearing pursuant to § 13-11-3 and § 13-11-4, Code 1975, after which it entered written findings of fact concerning the aggravating and mitigating circumstances as provided in § 13-11-6 and § 13-11-7, Code 1975. The trial court determined that although Ritter was an accomplice in the capital felony committed by Evans, his participation was not relatively minor and it further found that the aggravating circumstances "far outweigh[ed]" the mitigating circumstances:
"THE COURT Will you please rise? The Court having conducted a Hearing pursuant to Section 3 of Act No. 213 of the Legislature of Alabama, Regular Session 1975 to determine whether or not the Court will sentence Mr. Wayne Eugene Ritter to death or to life imprisonment without parole; and the Court having considered the evidence presented at the trial and at said sentence hearing, the Court makes the following findings of fact:
"The Court first considers the aggravating circumstances as described in Section 6 of said Act 213:
"(a) The Court finds that the Capital Felony was committed by Mr. Ritter while he was under sentence of imprisonment although he was serving the remainder of his sentence on parole at the time;
"(b) The Court finds that Mr. Ritter has been previously convicted of another felony involving the use or threat of violence to the person, to wit: the offense of robbery;
"(c) The Court finds that Mr. Ritter knowingly on approximately thirty-nine previous occasions created a great risk of death to many persons;
"(d) The Court finds that the Capital Felony was committed while Mr. Ritter was an accomplice in the commission of a robbery;
"(e) The Court finds that the Capital Felony was not committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody;
"(f) The Court finds the Capital Felony was not committed for pecuniary gain, within the meaning of Section 6(f) of said Act 213;
"(g) The Court finds the Capital Felony was not committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws;
"(h) The Court finds that the Capital Felony was committed in the immediate presence of the two young daughters of Edward A. Nassar, deceased, aged approximately nine years and seven years respectively. The Court finds that Edward A. Nassar, deceased, was shot through the back while he was unarmed and crawling along the aisle behind the counter. The Court finds no evidence that he was ordered to halt or given any warning before being shot. While in the personal opinion of the Court the Capital Felony was especially heinous or attrocious, the Court has no precedent or authority which would allow it to hold as a matter of law that this Capital Felony meets the test of being especially heinous or attrocious or cruel, as set out in Section (h) of Section 6 of Act 213, and so the Court makes no finding on this point.
"The Court now considers mitigating circumstances as described in Section 7 of said Act 213:
"(a) The Court finds that Mr. Wayne Eugene Ritter has a significant history of prior criminal activity;
"(b) The Court finds that the Capital Felony was not committed while Mr. Wayne Eugene Ritter was under the influence of extreme mental or emotional disturbance;
"(c) The Court finds that the victim was not a participant in Mr. Wayne Eugene *931 Ritter's conduct and did not consent to the act;
"(d) The Court finds that while Mr. Wayne Eugene Ritter was an accomplice in the Capital Felony committed by another person, his participation was not relatively minor, and by Mr. Ritter's own statement, he was prepared to shoot Edward A. Nassar, deceased, but could not fire because his accomplice, John L. Evans, III was in his line of fire;
"(e) The Court finds that Mr. Wayne Eugene Ritter did not act under extreme duress or under the substantial domination of another person;
"(f) The Court finds that the capacity of Mr. Ritter to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was not substantially impaired in any degree;
"(g) The Court finds that Mr. Wayne Eugene Ritter's age at the time of the crime to be a mitigating circumstance;
"(h) The Court finds further another mitigating circumstance, although not set out as such in Section 7 of said Act 213, to be the fact that Mr. Ritter made no effort or attempt to harm the two young daughters of Edward A. Nassar, deceased, who were in his immediate presence at the time of the commission of the Capital Felony or any of the other witnesses in the vicinity.
"The Court, having considered the aggravating circumstances and the mitigating circumstances and after weighing the aggravating and mitigating circumstances; it is the judgment of the Court that the aggravating circumstances far outweigh the mitigating circumstances and that the death penalty as fixed by the Jury should be and is hereby accepted."
The trial court then sentenced Ritter to death by electrocution.
Following the automatic appeal required by § 13-11-5, the Alabama Court of Criminal Appeals, on 25 October 1977, affirmed Ritter's conviction and sentence in Evans and Ritter v. State, 361 So.2d 654 (Ala.Cr. App.1977).
Certiorari was granted by this court as a matter of right as required by Alabama Rule of Appellate Procedure 39(c). On 19 May 1978, after careful review of the entire record this court issued its decision affirming in part Ritter's conviction and sentence, but remanding the case to the Court of Criminal Appeals for consideration of the non-triggerman issues. Evans and Ritter v. State, 361 So.2d 666 (Ala.1978).
On remand, the Court of Criminal Appeals, in a 9 August 1978 opinion, decided the non-triggerman issues adversely to Ritter and again affirmed his conviction and sentence. Ritter v. State, 375 So.2d 266 (Ala.Cr.App.1978).
Following return of the case to this court as required by the cited Rule, this court, on 6 July 1979, also decided the non-triggerman issues against Ritter and affirmed his conviction and sentence. Ritter v. State, 375 So.2d 270 (Ala.1979). On 7 September 1979, this court overruled Ritter's application for rehearing. On 28 September 1979, this court set 14 December 1979 as the date of Ritter's execution.
On 6 December 1979, Ritter filed a petition for the writ of certiorari to this court in the Supreme Court. His execution was thereafter stayed pending consideration of that petition by that court.
On 20 June 1980, the Supreme Court issued its decision in Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).
On 30 June 1980, the Supreme Court entered an order vacating this court's prior judgment in this case and remanded the case to us "for further consideration in light of Beck v. Alabama, 447 U.S. 625 [100 S.Ct. 2382, 65 L.Ed.2d 392] (1980)." Ritter v. Alabama, 448 U.S. 903, 100 S.Ct. 3044, 65 L.Ed.2d 1133 (1980).
On 19 December 1980, this court issued its decision in Beck after remand of it from the Supreme Court. Beck v. State, 396 So.2d 645 (Ala.1980).
On 8 May 1981, this court entered its decision reversing and remanding this case to the Court of Criminal Appeals. Ritter v. *932 State, No. 77-798 (Ala., 8 May 1981) (unpublished). The State then filed an application for a rehearing in the nature of a request for clarification. On 12 June 1981, this court denied the State's application for rehearing and extended its earlier opinion. Ritter v. State, 403 So.2d 154 (Ala.1981).
On 6 August 1981, the State filed its petition for the writ of certiorari in the Supreme Court. On 13 October 1981, that Court vacated this court's judgment (entered after the first remand) and again remanded the case to this court for further consideration in light of Reed v. State, 407 So.2d 162 (Ala.1981). Alabama v. Ritter, 454 U.S. 885, 102 S.Ct. 376, 70 L.Ed.2d 200 (1981). On remand, the parties agreed that the Supreme Court's purpose in remanding the case for a second time was to obtain clarification of whether this court had reversed this case on state or federal grounds.
On 11 December 1981, this court provided a clarification in an opinion holding the reversal was based solely on federal constitutional grounds. Ritter v. State, 414 So.2d 452 (Ala.1981). That opinion reinstated the reversal.
On 27 February 1982, the State again filed its petition for the writ of certiorari in the Supreme Court. On 24 May 1982, the case of Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), involving Ritter's co-defendant, was decided.
On 14 June 1982, the Supreme Court once again vacated this court's judgment of reversal and remanded this case for the third time "for further consideration in light of Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049 [72 L.Ed.2d 367] (1982)."
In Hopper, the Supreme Court determined, as previously mentioned, that the Alabama preclusion clause in the death penalty statute did not prejudice respondent Evans and he was not entitled to a new trial where under his own evidence, the possibility of commission of a lesser included offense was negated and therefore no jury instruction regarding such was required. The Supreme Court carefully noted that its holding in Beck, like its "other eighth amendment decisions in the past decade, was concerned with insuring that sentencing discretion in capital cases is channelled so that arbitrary and capricious results are avoided." (Emphasis added.) See, e.g., Roberts v. Louisiana, 428 U.S. 325, 334, 96 S.Ct. 3001, 3006, 49 L.Ed.2d 974 (1976) (plurality opinion); Woodson v. North Carolina, 428 U.S. 280, 303, 96 S.Ct. 2978, 2990, 49 L.Ed.2d 944 (1976) (plurality opinion). That theme is central to a constitutional determination of the validity of the sentence of death in a capital punishment case. The Supreme Court, in Hopper, went on to add that "due process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction." The underlying purpose is to allow a jury the channelled discretion to convict a defendant of any crime fairly supported by the evidence. Once again, that process ensures a result that is not "arbitrary or capricious."
The uniqueness of the facts of Ritter's case merit particular emphasis, for here, as in Evans, they bear on the key issue of whether he is entitled to a new trial and, extending that rationale, a new sentence hearing. From its inception, the facts of Ritter's case virtually parallel that of his companion, Evans, with the exception of the non-triggerman issue, which previously has been decided adversely to his plea for relief. See, Ex parte Ritter, 375 So.2d 270 (Ala.1979). To set the record straight, we reemphasize our reasoning at that time:
"... Through Ritter's confession and again through his voluntary statements at trial the State showed that Ritter and Evans had a prior agreement that anyone who attempted to go for a gun would be killed. This possibility was discussed beforehand and planned for. As Ritter himself stated, the only reason he did not shoot Nassar himself was because Evans was in the way. Clearly Ritter encouraged and supported the killing and was present with Evans' knowledge to render assistance should it become necessary."
"...
"... While we opine that there may be situations where an accomplice's participation *933 is so minor that the death penalty would be constitutionally impermissible, such is not the case here. As the trial judge stated, Ritter's participation was not relatively minor. The Court of Criminal Appeals agreed, and so do we. Ritter stands at the most culpable end of the spectrum of accomplice liability. He is closer to an individual who fires a non-fatal shot in a killing rather than one who waits outside as a lookout. By Ritter's own statement it was mere fortuity which made John Evans the triggerman and not Ritter. Consequently, we see no constitutional infirmity in imposing the death sentence in this case."
Ritter, 375 So.2d at 275.[3] The trial court instructed the jury that it could not convict Ritter unless it found beyond a reasonable doubt that he had "an actual or positive intent to kill." Clearly, with that single exception, the facts and circumstances of Ritter's case stand on all fours with that of Evans.
Ritter contends, however, as did Evans, that he is entitled to a new trial because his course of conduct at trial "may have been a tactical decision" influenced by the "brooding omnipresence" of the preclusion clause. Had it not been for the preclusion clause, Ritter now says, he "might well have made a different choice of how to proceed."
This argument is identical to the one the Supreme Court rejected in Hopper, and for the same reasons we opine that Ritter's argument should also be rejected. After Ritter was arraigned and pleaded guilty to the capital charge, the trial court granted a motion filed by Ritter's attorney to have Ritter examined by a psychiatrist. That examination revealed Ritter to be of bright, normal intellect. The psychiatrist also determined through his analysis that:
"Mr. Ritter is competent, rational, and able to stand trial. He thoroughly understands the nature and consequences of his actions, and is entirely capable of exercising control and judgment of his conduct. He sincerely seeks the death sentence, preferring this to a long prison sentence."
Against the advice of both his attorney and the trial court, Ritter knowingly and freely testified at length concerning his participation in the robbery and murder of Nassar. During his testimony both before the grand jury and the trial jury, Ritter admitted, under oath, commission of all elements of the capital offense of "robbery or attempts thereof when the victim is intentionally killed by the defendant":
"Q. Mr. Ritter, do you want to say anything to these people sitting in the Jury Box as to what you want them to do when they go back there?
"A. Well, I think there are two considerations. First, we did kill Mr. Nassar. We knew we might have to kill somebody during any robbery. We had discussed it before. If anybody went for a gun, that's what was going to happen. We did kill him, so, really, the only thing you can come back with is the death penalty. And the other consideration is, if you give me life, or if I got life imprisonment, I could get out in ten or fifteen years, and when I got out, I know where everybody on the Jury lives, and I wouldn't appreciate being in prison for ten or fifteen years, so I think I would have to come after you. That's about it."
Any claim that Ritter now makes asserting that he did not possess the intent to kill and could be found guilty of a lesser included offense is foreclosed by his testimony at trial. He, like Evans, affirmatively negated any claim that he did not intend to kill the victim. An instruction on the offense of felony-murder, or any other lesser offense, was therefore not required. Consequently, we find the preclusion clause did not prejudice respondent in any way and a new trial is not warranted. See Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982).
Ritter further contends he is entitled to a new sentence hearing under the requirements *934 of the Eighth and Fourteenth Amendments. He asks us to find that this court's opinion in Beck v. State, 396 So.2d 645 (Ala.1980), requires a new sentence hearing. We cannot agree.
In 1972 the Supreme Court concluded in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), that the death penalty, where juries are given unbridled discretion to sentence persons to death, constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth amendments.
In response to Furman, the Alabama Legislature, during its 1975 regular session, passed a new death penalty act, Title 15, § 342(3-11), Code of Alabama 1940 (1975 Interim Supp.). These same sections were later recompiled as § 13-11-1 through § 13-11-9, Code 1975. In passing that Act, our legislature made several meaningful policy determinations regarding the format of, and the procedure to be utilized under, the Act. Among those were the following subsections:
"§ 342(5). Hearing as to imposition of death penalty or life sentence without parole after conviction; admissibility of evidence; right of state and defendants to present arguments.If the jury finds the defendant guilty of one of the aggravated offenses listed in section 342(4) hereof and fixes the punishment at death, the court shall thereupon hold a hearing to aid the court to determine whether or not the court will sentence defendant to death or to life imprisonment without parole....
"§ 342(6). Determination of sentence by court; court not bound by punishment fixed by jury.Notwithstanding the fixing of the punishment at death by the jury; the court after weighing the aggravating and mitigating circumstances may refuse to accept the death penalty...."
Thus, the legislature decided that punishment should be imposed only after the trial judge conducted a hearing regarding applicability of the death sentence, after consideration of all aggravating and mitigating circumstances.
The post-Furman cases that have construed the various state capital punishment statutes all recognize that state legislative measures regarding the death penalty should be presumed valid and are to be accorded great weight. That concept was made apparent in the case of Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), wherein that court concluded:
"Therefore, in assessing a punishment selected by a democratically elected legislature against the constitutional measure, we presume its validity. We may not require the legislature to select the least severe penalty possible so long as the penalty selected is not cruelly inhumane or disproportionate to the crime involved. And a heavy burden rests on those who would attack the judgment of the representatives of the people.
"This is true in part because the constitutional test is intertwined with an assessement of contemporary standards and the legislative judgment weighs heavily in ascertaining such standards. `[I]n a democratic society legislatures, not courts, are constituted to respond to the will and consequently the moral values of the people.' Furman v. Georgia, 408 U.S. at 383, 33 L.Ed.2d 346, 92 S.Ct. 2726 [2800] (Burger, C.J., dissenting)."
Furman does not require all death penalty statutes to be alike. Several which do not conform to each other in all respects, have been upheld as being constitutional.[4]
The Supreme Court was careful to make that proposition clear by further stating:
"We do not intend to suggest that only the above-described procedures would be permissible under Furman or that any sentencing system constructed along those general lines would inevitably satisfy the concerns of Furman, for each distinct *935 system must be examined on an individual basis."
Gregg, at 428 U.S. at 195, 96 S.Ct. at 2935.
Lack of similarity in procedure is not constitutionally prejudicial if the statute provides a system whereby sentences of death are not imposed in a manner which can be described as "arbitrary or capricious."
Petitioner further argues the sentencing procedure under the 1975 death penalty statute is constitutionally infirm. He contends the death penalty is mandatorily imposed upon a finding of guilt because of the verdict form requirement. This is based on his contention that the sentencing procedure is tainted by the lack of bifurcation in a pre-Beck jury proceeding with respect to the finding of guilt and the fixing of sentence.
Ritter was tried, convicted and sentenced to death under Alabama's 1975 death penalty statute, § 13-11-1 through § 13-11-9, Code 1975.
The Supreme Court holding in Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), never declared that entire death penalty statute unconstitutional. See also, Ex parte Potts, 429 So.2d 928 (Ala.1983). It only determined that portion of the statute unconstitutional which did not allow the jury to consider a lesser included offense when conviction of such could be supported by the evidence. On remand to this court, in Beck v. State, we severed the preclusion clause from the statute. In doing so, we stated:
"The remainder of the Alabama Capital Punishment Statute is complete within itself, sensible, and capable of execution after the preclusion clause is stricken. Absent the fourteen words which constitute the preclusion clause, the long established Alabama statutory and common law rule will apply so that juries in capital cases will be instructed on any lesser included offenses supported by the evidence. That rule applies in every state in this country, see, Beck v. Alabama, 100 S.Ct. at 2388-2389 n. 12; it was the rule in every case tried in Alabama for more than a hundred years before Furman; it is still the rule in noncapital cases tried in Alabama, see, Beck v. Alabama, 100 S.Ct. at 2385 n. 5, 2388-2389; and it would unquestionably have been the rule in Alabama's post-Furman capital cases had the Alabama legislature not misinterpreted Furman."

Notwithstanding its holding in Beck, the Supreme Court distinguished the case of Hopper v. Evans and found the preclusion clause did not prejudice Evans when viewed in light of the particular facts in that case. By the reasoning enumerated earlier in this opinion this court finds that Ritter was constitutionally convicted based on those facts in his case which parallel those in Evans. It is also our opinion, viewed in light of the particular facts in this case, that Ritter was also constitutionally sentenced. We in nowise find the sentencing procedure, here provided and employed, prejudicial to Ritter.
It is the jury's function under Alabama's 1975 death penalty statute to determine the defendant's guilt or innocence. The statute directs the jury, if it finds the accused guilty, to fix the punishment at death. This is the verdict-form requirement contained in § 13-11-2(a). The jury has no discretion to fix any other penalty. Section 13-11-2(c), however, recognizes the possibility that the jury may fail to agree "on the fixing of the penalty of death," and provides that the trial court may declare a mistrial in such a contingency. If the defendant is convicted, then the trial judge must conduct a separate sentence hearing to review evidence regarding aggravation and mitigation about commission of the crime. § 13-11-3.
The requirement that the jury fix punishment of death if it finds the defendant guilty is in no way binding on the trial court in the latter's role as the sentencing authority. Section 13-11-4 provides in pertinent part that, "notwithstanding the fixing of the punishment at death by the jury...," the court, following the sentencing hearing and after weighing the aggravating and mitigating circumstances may sentence *936 the defendant to either death or life imprisonment. See, Beck v. State, 396 So.2d 645 (Ala.1980). Under Alabama's statute the trial court and not the jury is the sentencing authority. Jacobs v. State, 361 So.2d 640 (Ala.1978).
The mere fact that a sentence of death attaches to the jury's verdict of guilty does not render the procedure unconstitutional when the statute is examined as a whole. The jury, when deliberating on a verdict, is only concerned with the issue of the defendant's guilt or innocence. If the verdict is guilty, the jury has no discretion in setting the sentence; the statute provides only for the penalty of death. If the verdict is not guilty, the statute requires that the accused be discharged and, as noted, if the jury cannot agree on a verdict of guilty or not guilty or about fixing the death penalty, the trial court may enter a judgment of mistrial. In either of the above situations the jury has no discretion in determining the defendant's fate. Therefore, the jury's findings are not mandatory as to punishment. And although the prohibition on any charge as to a lesser included offense was struck down by Beck v. Alabama, we have already determined that provision did not prejudice Ritter under the unique facts of this case. See, Hopper v. Evans.
Additionally, by providing for separate proceedings for determination of guilt and punishment, Alabama's death penalty statute eliminates those vices enumerated in Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). In Roberts, the court pointed out the constitutional weakness of a mandatory death sentence:
"The constitutional vice of mandatory death sentence statuteslack of focus on the circumstances of the particular offense and the character and propensities of the offender...." (Emphasis added.)
That point was reemphasized in Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), when the Supreme Court said that capital sentencing decisions must focus "on the circumstances of each individual homicide and individual defendant." See also, Enmund v. Florida, ___ U.S. ___, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) (O'Connor, J., dissenting). This rationale is for the purpose of "determin[ing] independently whether the imposition of the ultimate penalty is warranted." Proffitt, at 428 U.S. at 253, 96 S.Ct. at 2967.
In Ritter's case, the trial court had a separate sentence hearing and considered, as it appears in its findings after that hearing, each and every aggravating factor in § 13-11-6 and each and every mitigating factor in § 13-11-7, as well as giving the prosecution and defense an opportunity to present any evidence, documentary or otherwise, as well as to present arguments, as envisioned under § 13-11-3.
Moreover, the statutory aggravating and mitigating circumstances in Alabama's death penalty law are identical in substance and number to those in the Florida Death Act (Fla.Stat.Ann. § 921.141(5)(6) Supp. 1976-1977), attacked in Proffitt. The Supreme Court rejected that attack by concluding:
"While the various factors to be considered by the sentencing authorities do not have numerical weights assigned to them, the requirements of Furman are satisfied when the sentencing authority's discretion is guided and channeled by requiring examination of specific factors that argue in favor of or against imposition of the death penalty, thus eliminating total arbitrariness and capriciousness in its imposition." (Proffitt, supra, at page 258, 96 S.Ct. at page 2969.)
Under the Alabama statute, the jury's determination of a sentence is merely advisory, leaving sentence to the trial court for determination in a separate hearing. After that hearing, in which aggravating and mitigating circumstances are weighed, the trial court may impose a sentence of death or life imprisonment. The statute further provides that if the trial court imposes a sentence of death, it must set forth in writing the aggravating circumstances supporting the sentence. § 13-11-4, Code 1975.
The record stands uncontradicted in this case in showing that the trial court weighed *937 the aggravating and mitigating circumstances, focusing on the particulars of the crime and the character and record of the defendant. That court, in weighing the factors in § 13-11-6, found five aggravating circumstances. In weighing the factors set out in § 13-11-7, it found two mitigating circumstances: Ritter's age at the time of crime, which was 23, and although not found in § 13-11-7, the fact that Ritter made no attempt to harm the two daughters of the victim who were present during the commission of this senseless cold-blooded assassination of their father. The trial court did determine, however, that Ritter's participation in the felony was not relatively minor. It further found that the "aggravating circumstances far outweigh[ed] the mitigating circumstances" whereupon Ritter was justifiably and constitutionally sentenced to death. Ritter was afforded a constitutional sentencing procedure which was in nowise tainted by arbitrariness or capriciousness.
Further, Ritter's constitutional safeguards were ensured by automatic review by the Court of Criminal Appeals and this court, required by statute and rules of this court. § 12-22-150, Code 1975; Rule 39(c), ARAP.
Review by both of these courts was thorough and deliberate. To pass on the death sentence is the gravest and most delicate duty that this court is called upon to perform. However, after careful scrutiny of the record, we conclude that petitioner's many issues raised are each without merit. Our review leads to the conclusion that Ritter was sentenced absent any trace of arbitrariness or capriciousness. The facts and circumstances of this particular case support that conclusion and mandate that Ritter's conviction and sentence be affirmed.
AFFIRMED.
TORBERT, C.J., MADDOX, FAULKNER, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
JONES, J., concurs in part and dissents in part.
JONES, Justice (concurring in part; dissenting in part).
I concur in the opinion with respect to the affirmance of the judgment of conviction. I dissent with respect to the judgment of sentence. Consistent with my dissent in Ritter v. State, 403 So.2d 154 (Ala.1981), I would remand to the Court of Criminal Appeals with instructions to remand this cause to the circuit court for a new trial on the issues of sentence in accordance with this Court's opinion in Beck v. State, 396 So.2d 645 (Ala.1980).
NOTES
[1] One opinion of this court was not published separately, Ritter v. State, No. 77-798 (Ala. May 8, 1981) (unpublished), but was incorporated into the 12 June 1981 opinion, 403 So.2d 154.
[2] Under § 13-11-2(a), Code 1975, if the jury finds the defendant guilty, the punishment is automatically fixed at death.
[3] Enmund v. Florida, ___U.S. ___, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), recognizes that it is constitutionally permissible to sentence to death a non-triggerman who has the intent to kill.
[4] See, Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976).