456 So.2d 129 (1984)
Ex Parte Brian Keith BALDWIN.
(Re Brian Keith Baldwin v. State.
83-276.
Supreme Court of Alabama.
July 13, 1984.
Rehearing Denied August 24, 1984.
*132 John L. Carroll, Montgomery, for petitioner.
Charles A. Graddick, Atty. Gen., and William D. Little and Jean Williams Brown, Asst. Attys. Gen., for respondent.
PER CURIAM.
Brian Keith Baldwin was indicted for, and convicted of, the capital offense of "robbery ... with the aggravated circumstance of intentionally killing the victim." Ala.Code 1975, § 13-11-2(a)(2) (repealed 1981, Act No. 81-178, § 20, but effective as to conduct occurring before July 1, 1981). He was sentenced to death.
The conviction was affirmed originally by the Court of Criminal Appeals in 1978, Baldwin v. State, 372 So.2d 26 (Ala.Crim. App.1978), and by this Court in 1979, Ex Parte Baldwin, 372 So.2d 32 (Ala.1979) (Baldwin I). After having granted certiorari, the United States Supreme Court vacated the judgment and remanded the case for further consideration in light of Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). Baldwin v. Alabama, 448 U.S. 903, 100 S.Ct. 3043, 65 L.Ed.2d 1133 (1980). This Court remanded the case to the Court of Criminal Appeals, Baldwin v. State, 405 So.2d 699 (Ala.1981), which once again affirmed the conviction, Baldwin v. State, 456 So.2d 117 (Ala.Crim.App. 1983). Baldwin's present petition for writ of certiorari was granted as a matter of right under A.R.A.P., Rule 39(c).
The facts of this case have been set out repeatedly in the above decisions. We only briefly reiterate them. Petitioner and Edward Horsley, escapees from a North Carolina prison camp, abducted their young victim in Hudson, North Carolina. They took control of her automobile and locked her in the trunk. They then drove the car from North Carolina, through South Carolina and Georgia, to Monroe County, Alabama, where they intentionally killed her. Petitioner and Horsley had separate trials in the Circuit Court of Monroe County.
Petitioner now raises these issues:
(1) Was petitioner prejudiced at trial by the existence of the preclusion clause and, therefore, entitled to a new trial under Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980)?
(2) Was the prosecutor's remark in his opening statement, that the petitioner had escaped from a prison camp in North Carolina, reversible error?
(3) Was a prospective juror improperly excluded under Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)?
(4) Are the sentencing provisions of the 1975 Death Penalty Act, under which petitioner was sentenced, unconstitutional?
(5) Was it improper to consider the petitioner's prior youthful offender and juvenile adjudications as aggravating circumstances to support the sentence of death?

I.
Petitioner's trial was held in 1977, before the preclusion clause of the 1975 Death Penalty Act was struck down by the United States Supreme Court in Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). The only offense with which petitioner *133 was charged, and for which he was tried, was the capital offense of robbery in which the victim is intentionally killed. In accordance with the then existing preclusion clause, contained in § 13-11-2(a), Ala. Code 1975, the jury was not allowed to consider any lesser included offenses during its deliberations. It returned a verdict of guilty of capital murder.
Petitioner now contends that under Beck v. Alabama, supra, he is entitled to a new trial because he was prejudiced by the existence of the preclusion clause. The complete test to determine the effect of the preclusion clause on a pre-Beck trial was set out in Cook v. State, 431 So.2d 1322 (Ala.1983):
"(1) Was there any evidence presented at trial upon which a conviction of a lesser included offense could have been based? (2) If not, has the defendant suggested any plausible claim which he might conceivably have made, had there been no preclusion clause, that is not contradicted by his own testimony at trial? If the answer to both of these questions is no, then a conviction at trial is due to be affirmed."
Cook v. State, 431 So.2d at 1324. The first question is taken from Beck v. Alabama, supra. The second one was posed first in Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982).
Petitioner asserts that the answer to both questions is yes. We do not agree.
Regarding the first part of the test, petitioner contends that although the murder most probably occurred in Alabama, the great weight of the evidence shows that the robbery, if any, took place entirely within North Carolina, where he and Horsley took control of the victim's car. Petitioner argues that he committed, at most, first degree murder in Alabama, and he would have been entitled to a jury charge on this offense had the preclusion clause not existed.
Alabama's jurisdiction to try and convict petitioner for the capital offense of robbery in which the victim is intentionally killed is not dependent upon the venue of the robbery. Petitioner may be convicted of this offense regardless of where the robbery occurred. Therefore, evidence that the robbery took place in North Carolina does not entitle petitioner to a jury charge on first degree murder. We made this clear in Baldwin I when we defined this capital offense and held that Alabama had jurisdiction to convict petitioner of the crime:
"The crime of robbery when the victim is intentionally killed is a single offense beginning with the act of robbing or attempting to rob and culminating with the act of intentionally killing the victim. The offense consists of two elements, robbing and intentionally killing, but does not consist of two separate offenses. See Ex parte Clements, 370 So.2d 723 (Ala.1979); Horsley v. State, [374 So.2d 363] (Ala.Crim.App.1978). Therefore, although the offense was commenced in North Carolina, it was not consummated until Naomi Rolon was killed in Monroe County, Alabama.
"The place where the crime was consummated is the place where the crime was committed and the place where the defendant may be tried. 21 Am.Jur.2d Criminal Law § 399, at 416. Section 15-2-4 provides:
"`When the commission of an offense commenced elsewhere is consummated within the boundaries of the state of Alabama, the offender is liable to punishment in Alabama, although he was out of the state at the commission of the offense charged, if he consummated it in this state through the intervention of an innocent or guilty agent or by any other means proceeding directly from himself; and venue in such case is in the county in which the offense was consummated, unless otherwise provided by law.'
"§ 15-2-4, Code 1975.
"Accordingly, venue did lie in Monroe County and petitioner was properly tried *134 and convicted. The decision of the Court of Criminal Appeals is affirmed."
Baldwin I, 372 So.2d at 33, 34.
We have searched the entire record and have found no other evidence to support a verdict of guilty of a lesser included offense. Petitioner is not entitled to a new trial under Beck v. Alabama, supra, and the answer to the first question must be no.
Prior to closing arguments at trial, the trial court ruled that Alabama had jurisdiction to convict the petitioner of the capital offense, if both the robbery and the intentional killing occurred in Alabama. It also determined that the venue of the crime was a question of fact to be determined by the jury. It instructed the jury accordingly:
"I think this case really comes down to this, ladies and gentlemen. I want to put it to you in two different questions. There are two questions that this jury must answer: First, did the defendant rob Naomi Rolon in Monroe County, Alabama, as I have defined the term? Second, did the defendant intentionally kill Naomi Rolon in Monroe County, Alabama, in the course of said robbery?
"If each and every one of you are convinced beyond a reasonable doubt and to a moral certainty that the answer to each of these questions is `yes,' your verdict should be guilty. If you are not so convinced, your verdict should be not guilty."
Petitioner correctly argues that the decision in Baldwin I necessarily holds that the trial court's charge to the jury was incorrect. However, petitioner was not prejudiced by this error. Under the court's charge, the jury was required to find not only that the petitioner intentionally killed the victim in Monroe County, but also that he robbed her there. This charge, although erroneous, was to petitioner's benefit, not his detriment. Petitioner argues otherwise. He contends that this charge presented to the jury the very dilemma that the United States Supreme Court hoped to eradicate by its decision in Beck v. Alabama, supra. It was concerned that a jury would convict a defendant of a capital offense, even if it had some doubt as to the existence of some element of the crime, rather than let the defendant go free. However, we find that petitioner's case is different. Even if the jury had some doubt about the venue of the robbery, its conviction on the capital offense is supported by the evidence, because, under Baldwin I, petitioner is guilty of the offense, regardless of where the robbery took place. The effect of the incorrect jury instruction made it more difficult to convict petitioner, but it did not result in an unconstitutional conviction.
Petitioner next argues that if we affirm Baldwin I, which we have done, then his defense at trial was invalid and frivolous, and, consequently, he received ineffective assistance of counsel.
The burden of proof is upon the petitioner. The United States Supreme Court, in a very recent decision, Strickland v. Washington, ___ U.S. ___, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), explicitly described the burden of proof with regard to this claim. First, petitioner must show that counsel's performance was so deficient as to fall below an objective standard of reasonableness. Counsel's conduct must be considered within the context of the facts of the particular case and as of the time of the alleged misconduct. Second, petitioner must show that counsel's deficient performance prejudiced the defense and deprived petitioner of a fair trial. Prejudice is shown when, absent the errors, there is a reasonable probability that the jury would have had a reasonable doubt respecting guilt.
At the time of the trial, the defense asserted was not frivolous, because, if the jury had believed petitioner and found the facts to be as he contended, i.e., that the robbery occurred in North Carolina, he would have been acquitted of the charge. Therefore, under the law of the case, trial counsel's decision to use this defense against the charge was sound. Counsel did *135 not fail in the performance of his duty to present the best defense possible under the law. We need not consider the second factor of the test in Strickland.
Returning to the test in Cook v. State, supra, for the effect of the preclusion clause, we answer the second question of that test in the negative also. Petitioner has not suggested any plausible claim which he would have made had there been no preclusion clause. Petitioner must not only suggest a defense which he might have made, but he must also show that he did not assert the defense because of the preclusion clause. Hopper v. Evans, supra; Ritter v. Smith, 726 F.2d 1505 (11th Cir.1984), petition for cert. filed, 52 U.S. L.W. 3875 (U.S. May 15, 1984). If we did not require this last showing, petitioner conceivably could assert any defense which has now occurred to him and demand that he be given a new trial at which he may raise a new defense. This could not be what the United States Supreme Court intended in Hopper v. Evans, supra, when it formulated this part of the test. That court was concerned with the effect the preclusion clause had upon the trial, i.e., whether the "brooding omnipresence" of the preclusion clause in any way influenced the defendant's decision on how to defend against a capital charge. The Supreme Court specifically stated that "a defendant might make a plausible claim that he would have employed different trial tacticsfor example, that he would have introduced certain evidence or requested certain jury instructionsbut for the preclusion clause." (Emphasis added.) Hopper v. Evans, 456 U.S. at 612-13 n., 102 S.Ct. at 2053-54 n. This should not be construed as an invitation to all defendants tried under the 1975 Death Penalty Act to defend against the capital charge anew before the appellate courts, asserting any new defense not presented at trial, without regard to whether it was one that was considered and discarded because of the preclusion clause.
Petitioner suggested during oral argument that he might have defended by presenting evidence that at the time of the killing he was under the influence of narcotics and unable to form the specific intent to kill. There was no showing that the existence of the preclusion clause stopped petitioner from asserting this defense. There is not even an inference that this was the case. Petitioner could have made this defense at trial and have been acquitted, if it were successful. The jury was charged that specific intent was an element of the capital offense, and that it must find that specific intent in order to return a verdict of guilty. No other claims are put forth by petitioner.
We hold that petitioner was not prejudiced by the existence of the preclusion clause and that he was not entitled to an instruction on a lesser included offense. There was no evidence presented at trial which would have supported a conviction of a lesser included offense, nor has petitioner suggested any plausible claim which he would have made but for the preclusion clause.

II.
Petitioner contends that he was denied an impartial jury as guaranteed by the Sixth Amendment of the United States Constitution, because one of the prospective jurors was excluded improperly. He contends that this prospective juror was excluded solely because she would not fix punishment at death even if she "were convinced beyond a reasonable doubt of the guilt of this defendant." He argues that Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), requires that a juror be excluded only "if [s]he is irrevocably committed, before the trial has begun, to vote against the death penalty regardless of the facts and circumstances that might emerge in the course of the proceedings." Witherspoon v. Illinois, 391 U.S. at 522, n. 21, 88 S.Ct. at 1777, n. 21. Petitioner insists that this juror was excluded for reasons which fall below the standard set in Witherspoon.
The Court of Criminal Appeals held that this prospective juror was not *136 excluded in violation of the principles of Witherspoon. That Court, upon review of the pertinent portion of the record, which is set out in the opinion, found that the prospective juror "unequivocally told the trial judge that she could not, under any circumstances, impose the death penalty on this appellant, and that she would automatically vote against its imposition." Baldwin v. State, 456 So.2d 117 (Ala.Crim.App.1983). It noted that the trial court does not have to use the exact words of the United States Supreme Court in Witherspoon during examination of the jurors in order to fulfill the standards set by that decision.
We adopt the holding of the Court of Criminal Appeals and add one citation. In Ex Parte Dobard, 435 So.2d 1351 (Ala. 1983), we affirmed the exclusion of a prospective juror who had a "fixed opinion against capital punishment" and who would not be able "to return a verdict sentencing someone to the electric chair if they were found guilty beyond a reasonable doubt and to a moral certainty of the crime of the charges." Dobard, 435 So.2d at 1356. The juror's exclusion was proper even though the exact language of Witherspoon was not used by the trial court, because it was "difficult to envision how [the] ... prospective juror could have been more explicit in expressing an unqualified opposition to the death penalty." Dobard, 435 So.2d at 1356. Similarly, in this case, a review of the transcript of the voir dire examination of the prospective juror whose exclusion is questioned makes it unmistakably clear that this prospective juror would not vote for the death penalty under any circumstance.
For these reasons and the reasons contained in the opinion of the Court of Criminal Appeals, we hold that the prospective juror's exclusion was proper and that petitioner was not denied his constitutional right to an impartial jury.

III.
Petitioner next argues that the prosecutor's remarks during his opening statement, that petitioner had escaped from a North Carolina prison camp only hours before meeting the victim and abducting her, were reversible error. The rules regarding what is permissible during opening statement are well settled:
"Erroneous insistences and prejudicial conduct on the part of district attorneys tend unduly to prejudice and bias the jury against the defendant. It is not permissible for the solicitor to make an emphatic statement that the defendant is guilty of the crime charged. Rowland v. State, 31 Ala.App. 605, 20 So.2d 881 (1945). The prosecution's opening statement to the jury on what it expects to prove should be confined to statements based on facts admissible in evidence. Higdon v. State, 25 Ala.App. 209, 143 So. 213 (1932). Counsel, however, is to be allowed considerable latitude in presenting to the jury in his opening statement what he expects the evidence to show. Rogers v. State, 49 Ala.App. 78, 268 So.2d 859 (1972). The trial judge must be given wide discretion in determining whether the making of a certain utterance by the District Attorney requires that a mistrial be granted. Ballard v. State, 51 Ala.App. 393, 286 So.2d 68 (1973)."
White v. State, 294 Ala. 265, 314 So.2d 857, 861-2 (1975); cert. denied, White v. Alabama, 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975); reh. denied, 423 U.S. 1039, 96 S.Ct. 577, 46 L.Ed.2d 415 (1975).
The issue then is whether the questioned remark was based on facts admissible in evidence. The Court of Criminal Appeals properly answered this question:
"Generally, evidence of other crimes which a defendant has committed is not admissible at his trial on a particular offense. McElroy's Alabama Evidence, § 69.01(1), Third Edition (1977). However, the prosecutor's statement falls within one of the widely recognized exceptions to the general rule.
"`... [I]f two or more crimes constitute one criminal transaction, evidence of the other crime or crimes is admissible. *137 In Parsons v. State, 251 Ala. 467, 477, 38 So.2d 209, it was stated:
"`"But the rule is that if several crimes in fact constitute one criminal transaction, evidence of all such crimes may be given as part of the res gestae of the offense with which defendant is charged. Allison v. State, 1 Ala.App. 206, 55 So. 453; Askew v. State, 6 Ala.App. 41, 60 So. 455; Ingram v. State, 39 Ala. 247, 84 Am.Dec. 782."'
"`Judge McElroy, citing numerous supporting authorities, has the following to say on the subject:
"`"Evidence of accused's commission of another crime is admissible if such other crime is inseparably connected with, or is a `part of the res gestae' of the, now-charged crime; or, if such other crime and the now-charged crime are parts of one continuous transaction or one continuous criminal occurrence..." McElroy, Law of Evidence in Alabama, § 69.01(3).'

"Brown v. State, 338 So.2d 1050 (Ala. Crim.App.1976).
"From a review of the record, it is clear to this court that this escape commenced the series of events that eventually led to the killing of the victim herein."
Baldwin v. State, 456 So.2d at 121 (Ala. Crim.App.1983).
Evidence of the escape is admissible under this exception, and such evidence, in fact, was admitted. Petitioner's sworn statement, in which he told of his escape and the subsequent events, was admitted. The prosecutor was within reason at the time he delivered his opening statement to expect that such evidence would be admitted.
We do not find any abuse of discretion by the trial court in allowing the remark to be made to the jury during the prosecutor's opening statement and, accordingly, affirm the Court of Criminal Appeals decision that there was no reversible error committed.
We hold that petitioner was not entitled to a jury instruction on a lesser included offense. We also hold that there was no reversible error committed during the trial. We have reviewed the entire record of the trial proceeding and find no error which "has or probably has adversely affected the substantial rights of the petitioner." A.R.A.P., Rule 39(k). Accordingly, we affirm the conviction.

IV.
We now consider petitioner's challenge to the sentencing phase of the proceedings. He contends that the sentencing provisions of the 1975 Death Penalty Act, under which he was sentenced, are unconstitutional.
The relevant provisions state:
"§ 13-11-2(a) If the jury finds the defendant guilty [of one of the aggravated offenses listed in § 13-11-2], it shall fix the punishment at death....
". . . .
"§ 13-11-3. If the jury finds the defendant guilty of one of the aggravated offenses listed in section 13-11-2 and fixes the punishment at death, the court shall thereupon hold a hearing to aid the court to determine whether or not the court will sentence the defendant to death or to life imprisonment without parole....
"§ 13-11-4. Notwithstanding the fixing of the punishment at death by the jury, the court, after weighing the aggravating and mitigating circumstances, may refuse to accept the death penalty as fixed by the jury and sentence the defendant to life imprisonment without parole, which shall be served without parole; or the court, after weighing the aggravating and mitigating circumstances, and the fixing of the punishment at death by the jury, may accordingly sentence the defendant to death."
These provisions have never been held to be unconstitutional by this Court or by the United States Supreme Court. Ritter v. State, 429 So.2d 928 (Ala.1983); Beck v. State, 396 So.2d 645 (Ala.1980). The Eleventh Circuit Court of Appeals, in Ritter v. Smith, 726 F.2d 1505 (11th Cir.1984), however, *138 has held recently that these sentencing provisions are unconstitutional on their face.
Petitioner relies solely upon this Eleventh Circuit decision to support his argument that the 1975 sentencing procedure is unconstitutional. This issue was raised by Ritter on a petition for writ of habeas corpus.
The Eleventh Circuit first noted that the 1975 sentencing procedure (§ 13-11-4) provides for a mandatory death sentence by the jury. The Court held that such a death sentence "is unguided and standardless, reflects no consideration of the particular defendant or crime, and is irrelevant to the sentencing process," Ritter v. Smith, 726 F.2d at 1516, and is, therefore, unconstitutional. The Court recognized that in Alabama the trial judge, not the jury, is the sentencing authority, and that a separate sentencing hearing is held by the trial judge after the jury returns a verdict of guilty of a capital offense. However, it found that
"the statute [§ 13-11-4] requires the judge to weigh the mandatory death sentence factor in the balance with his consideration of aggravating and mitigating circumstances in deciding to impose the death penalty. Id. Thus, the constitutionally impermissible factor of the jury's mandatory death sentence must be given weight in the judge's own sentencing decision."
The Eleventh Circuit Court of Appeals concluded by holding that
"the inclusion of the constitutionally invalid factor of the jury's mandatory death sentence in the sentencing determination, and the statutorily required influence of that invalid factor on the judge's sentencing decision, renders the 1975 Alabama death penalty statute's sentencing procedures facially unconstitutional."
Ritter v. Smith, 726 F.2d at 1516-1517.
The United States Supreme Court has also considered the constitutionality of the 1975 sentencing procedure in Alabama v. Evans, 461 U.S. 230, 103 S.Ct. 1736, 75 L.Ed.2d 806 (1983). The Court vacated a stay of execution which had been granted by the district court. In doing so, it stated that "[r]espondent's petition for writ of habeas corpus filed on April 21, 1983, [in the District Court for the Southern District of Alabama] thus seeks to litigate several issues conclusively resolved in prior proceedings [including the constitutionality of the 1975 sentencing procedure] and a claim never before raised." Alabama v. Evans, 461 U.S. at 233, 103 S.Ct. at 1739.
A stay is issued "only if there is a substantial question to be preserved for further proceedings in the courts." Rosenberg v. United States, 346 U.S. 273, 288, 73 S.Ct. 1152, 1160, 97 L.Ed. 1607 (1953). Therefore, in order to vacate a stay of execution, the Supreme Court must review all of the issues to determine if any of them are "substantial" and unanswered.
The Supreme Court in Alabama v. Evans, supra, did review the issue that Ritter raised and which petitioner now raises and did not find that it was a "substantial" question. Evans was executed on the same day, but after the stay was vacated. We cannot presume that the Supreme Court would have allowed the execution to take place if it had had even the slightest doubt whether Evans's challenge to the sentencing procedure had some merit.
This Court also addressed the constitutionality of the 1975 sentencing procedure, one year before the Eleventh Circuit's decision was handed down, in Ritter v. State, 429 So.2d 928 (Ala.1983), upon remand from the United States Supreme Court for consideration in light of Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982). Ritter v. Alabama, 457 U.S. 1114, 102 S.Ct. 2921, 73 L.Ed.2d 1326 (1982). Like petitioner, Ritter was tried in 1977 under the original 1975 Death Penalty Act. He has never been retried or resentenced. We held, Ritter v. State, 429 So.2d 928, as did the Eleventh Circuit, Ritter v. Smith, 726 F.2d 1505, that Ritter was not prejudiced by the existence of the preclusion clause at the time of his trial and is not entitled to a new trial under Beck v. Alabama, *139 supra, or Hopper v. Evans, supra. This is also what we held in petitioner's case. However, unlike the Eleventh Circuit, we upheld the sentencing provisions of the 1975 act. We reaffirm that holding today.
Section 13-11-2(a) of the 1975 act mandates that "[i]f the jury finds the defendant guilty, it shall fix the punishment at death." The jury has no discretion in sentencing. The statute also makes it clear, however, that the court, not the jury, is the sentencing authority and that the jury's sentence of death is merely advisory.
"The requirement that the jury fix punishment of death if it finds the defendant guilty is in no way binding on the trial court in the latter's role as the sentencing authority. Section 13-11-4 provides in pertinent part that, `notwithstanding the fixing of the punishment at death by the jury ...,' the court, following the sentencing hearing and after weighing the aggravating and mitigating circumstances may sentence the defendant to either death or life imprisonment. See, Beck v. State, 396 So.2d 645 (Ala. 1980). Under Alabama's statute the trial court and not the jury is the sentencing authority. Jacobs v. State, 361 So.2d 640 (Ala.1978)."
Furthermore,
"Additionally, by providing for separate proceedings for determination of guilt and punishment, Alabama's death penalty statute eliminates those vices enumerated in Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). In Roberts, the court pointed out the constitutional weakness of a mandatory death sentence:
"`The constitutional vice of mandatory death sentence statuteslack of focus on the circumstances of the particular offense and the character and propensities of the offender ....' (Emphasis added.)
"That point was reemphasized in Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), when the Supreme Court said that capital sentencing decisions must focus `on the circumstances of each individual homicide and individual defendant.' See also, Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) (O'Connor, J., dissenting). This rationale is for the purpose of `determin[ing] independently whether the imposition of the ultimate penalty is warranted.' Proffitt, at 428 U.S. at 253, 96 S.Ct. at 2967.
"In Ritter's case, the trial court had a separate sentence hearing and considered, as it appears in its findings after that hearing, each and every aggravating factor in § 13-11-6 and each and every mitigating factor in § 13-11-7, as well as giving the prosecution and defense an opportunity to present any evidence, documentary or otherwise, as well as to present arguments, as envisioned under § 13-11-3."
Ritter v. State, 429 So.2d at 935-36.
We emphasize that the trial court must conduct a separate sentencing hearing, which is independent of the guilt phase of the proceeding. Section 13-11-4 requires the court to weigh all of the aggravating circumstances against all of the mitigating circumstances, and make its sentencing determination. The court shall either sentence the defendant to death, and necessarily accept the jury's sentence, or sentence the defendant to life imprisonment without parole, and necessarily reject the jury sentence.
We hold that the sentencing procedure under the 1975 Death Penalty Act is constitutional, even though the jury has no discretion in sentencing. The statute is saved by the fact that the court, which is the sentencing authority, considers the circumstances of the particular offense and the character and propensities of the offender, i.e., the aggravating and mitigating circumstances, in a separate and independent sentencing hearing, and then imposes the sentence.
In Beck v. State, 396 So.2d 645 (Ala. 1980), we held that a defendant accused of a capital crime should thereafter receive a bifurcated trial. We were concerned that, *140 absent the preclusion clause, a jury would refuse to convict a defendant of a capital crime proven beyond a reasonable doubt because of the enormity of the sentence and the apparently mandatory nature of the death sentence. The bifurcated trial eliminates this "risk that the jury will use its power to decide guilt to make a de facto punishment decision." Beck v. State, 396 So.2d at 660.
However, it has never been held that all defendants sentenced under the 1975 act must be resentenced in accordance with the procedure set out in Beck v. State, supra. The United States Supreme Court (Stewart, Powell, and Stevens, JJ.), in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), stated:
"We do not intend to suggest that only the above-described procedures would be permissible under Furman [v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346] or that any sentencing system constructed along these general lines would inevitably satisfy the concerns of Furman, for each distinct system must be examined on an individual basis. Rather, we have embarked upon this general exposition to make clear that it is possible to construct capital-sentencing systems capable of meeting Furman's constitutional concerns."
Gregg v. Georgia, 428 U.S. at 195, 96 S.Ct. at 2935.
We accordingly hold that petitioner is not entitled to be resentenced under Beck v. State, supra. The risk with which we were concerned in Beck was not present at petitioner's trial. He was not entitled to an instruction on a lesser included offense. The jury could either acquit or convict him of the capital offense. Even though the jury was instructed to sentence him to death if it found him guilty, it convicted him. He was not prejudiced by the fact that the jury had no discretion to consider any sentence except death. True, he could have been sentenced to life without parole by the trial judge, who had that decision to make, since he was not bound by the jury's sentence.

V.
Petitioner argues that the trial judge improperly considered two prior juvenile adjudications, rendered in the state of North Carolina, as aggravating circumstances in support of the death sentence.
The Court of Criminal Appeals addressed this issue and held that it was improper to consider one of the prior adjudications. That court found that the elimination of this one, non-statutory, aggravating circumstance did not affect the balance. It was convinced that the sentencing judge would have sentenced petitioner to death, even absent this aggravating circumstance. Having found the error to be harmless error, it affirmed the sentence of death. Baldwin v. State, 456 So.2d at 127 (Ala. Crim.App.1983).
We have studied the record and the opinion of the Court of Criminal Appeals, and we agree. We would be hard pressed to improve upon the opinion of the Court of Criminal Appeals and, therefore, we adopt that part of it which is addressed to this issue, and we affirm the sentence.

VI.
The sentence of death was not imposed in an arbitrary or capricious manner, nor was it handed down under the influence of passion or prejudice. The sentence was appropriate, as the aggravating circumstances greatly outweighed the mitigating circumstances. We take judicial notice that other defendants convicted of this offense have also received sentences of death. Most notably, Edward Horsley, petitioner's accomplice, has been sentenced to death. Horsley v. State, [MS. November 29, 1983] (Ala.Crim.App.1983).
Accordingly, the conviction of petitioner and the sentence of death are affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER, ALMON, SHORES, EMBRY, and ADAMS, JJ., concur.
*141 JONES, J., concurs in part and dissents in part.
BEATTY, J., dissents.
JONES, Justice (concurring in part and dissenting in part).
I dissent only as to Part IVthat portion of the opinion relating to the sentencing phase of the trial. In other words, I would affirm as to all aspects of the appeal except that I would reverse the sentence and remand to the Court of Criminal Appeals with instructions to remand to the trial court for a new sentencing hearing. Consistent with the views expressed in my dissent in Ritter,[1] with which Justices Maddox and Adams concurred (and also consistent with Justice Maddox's special concurring opinion on rehearing,[2] in which I, along with Justice Adams, concurred), I believe the restructured, bifurcated proceedings established by this Court in Beck upon remand require a new sentencing hearing. Beck v. State, 396 So.2d 645 (Ala. 1980) (Beck II).
I do not reach the constitutional question addressed by Judge Johnson, writing for the 11th United States Circuit Court of Appeals in Ritter v. Smith, 726 F.2d 1505 (11th Cir.1984), holding Alabama's pre-Beck II mandatory death sentence by the jury, in the event of a guilty verdict, constitutionally defective. These considerations are not of primary concern from the standpoint of State law, however, in light of Alabama's statutory scheme of sentencing, as judicially modified by Beck II upon remand.
Because the trial judge is the ultimate sentencing authority, reasons the majority, the mandatory death sentence imposed by the jury is of no consequence (i.e., such procedure is not prejudicial error), where the conviction is due to stand for lack of a meritorious lesser included offense challenge.
In my opinion, this overlooks the statutory scheme (unchanged by this Court's Beck II opinion) that gives the jury a vital role in the sentencing process. It may well be that, under the United States Supreme Court's guidelines for administering the death penalty, the statutory scheme would meet federal constitutional muster if the jury's role in the sentencing process had been omitted altogether (assuming, of course, that the statute prescribes an appropriate bifurcated sentencing hearing before the trial judge). But it was not omitted. Indeed, the trial judge is statutorily mandated to consider the jury's verdict of sentence. Under pre-Beck II law, only by acquitting the defendant was the jury authorized to render any verdict other than death. In other words, Baldwin's jury could either find him not guilty, or find him guilty and sentence him to die.
If one of the factors that the trial judge must duly consider in the exercise of his sentencing prerogative is the sentence pronounced by the jury, then, under the pre-Beck II mandatory sentencing procedure, that judicial consideration is necessarily confined to the jury's sentence of death. It is not a matter of not trusting the trial judge to exercise his independent judgment, just the opposite. To be sure, I trust our State trial judges to follow the spirit, as well as the explicit mandate, of the statute requiring them to give due consideration to the jury's pronouncement of sentence, and to exercise their independent judgment accordingly.
Obviously, the legislature, in retaining the jury's role in the two-step sentencing process, intended for the trial judge, as the final sentencing authority, to have the benefit of the community's input as expressed *142 in the jury's "recommendation" of sentence. That legislative willas a due process requisiteis thwarted where the jury is legally bound to "recommend" only the death penalty.
BEATTY, Justice (dissenting):
I adhere to my dissent expressed in Baldwin I, 372 So.2d 32 (Ala.1979).
NOTES
[1] Ritter v. State, 403 So.2d 155 (Ala.1981).
[2] The characterization of Justice Maddox's opinion as "concurring specially in denial of rehearing" is an obvious inadvertence and not in keeping with the content of his opinion. His opinion reinforces what I had written in dissent on original deliverance. Because three Justices (Maddox, Adams, and I) would not have reversed the conviction, we necessarily addressed the validity of the sentence issue. Because the majority was reversing and remanding for a new trial as to both the conviction and the sentence, it had no occasion to address the separate issue of whether Ritter was entitled to a new trial as to the sentencing phase only.